**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| VIJENDRA KUMAR SINGH, an individual,<br><br>          Petitioner - Appellant,<br><br>      v.<br><br>ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States; JANET NAPOLITANO, in her official capacity as Secretary of the Department of Homeland Security; TIMOTHY AITKEN, in his official capacity as San Francisco Field Office Director of US Immigration and Customs Enforcement, Detention and Removal; and DONNY YOUNGBLOOD, in his official capacity as Sheriff of Kern County Sheriff's Department and Lerdo Detention Facility,<br><br>          Respondents - Appellees. | No. 10-15715<br><br>D.C. No. 3:09-cv-03012-JSW<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted October 4, 2010
Pasadena, California

Filed March 31, 2011

Before: Susan P. Graber, Raymond C. Fisher and Jay S. Bybee, Circuit Judges.[1]

Opinion by Judge Fisher

RAYMOND C. FISHER, Circuit Judge:

In *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), we held that aliens facing prolonged detention while their petitions for review of their removal orders are pending are entitled to a bond hearing before a neutral immigration judge. In this appeal we address certain procedures that must be followed in those hearings to comport with due process. We hold as an initial matter that a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review *Casas* bond hearing determinations for constitutional claims and legal error. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003). We also hold that, given the substantial liberty interests at stake in *Casas* hearings, the government must prove by clear and convincing evidence that continued detention is justified. We further hold that the immigration court is required to make a contemporaneous record of *Casas* hearings and that an audio recording would suffice.

**Background**

---

[1] Judge Susan P. Graber was drawn to replace Judge Cynthia Holcomb Hall, now deceased. Judge Graber has read the briefs, reviewed the record and listened to the tape of oral argument held on October 4, 2010.

Vijendra Singh is a native and citizen of Fiji who was admitted to the United States in 1979 on a visitor visa. He became a lawful permanent resident in 1981. He has been married to Babita Singh, who is also a U.S. resident, since 1985, and they have five children, all of whom are U.S. citizens. In April 2007, the Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) issued Singh a Notice to Appear (NTA), charging that he was removable because he had been convicted of receiving stolen property in 2006 and petty theft with priors in 2005. Singh was taken into ICE custody without bond on April 10, 2007, and has remained in continuous custody from that time until the present.

In September 2007, the immigration judge (IJ) concluded that Singh was ineligible for cancellation of removal because he had committed an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(G).[2] Singh appealed to the Board of Immigration Appeals (BIA), which affirmed the removal order in March 2008. He then filed a petition for review of the final administrative order of removal with this court in August 2008, docketed as No. 08-71682. We stayed the

---

[2] On September 27, 2007, ICE amended the NTA to add the charge that Singh was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. This charge was premised on Singh's 2003 conviction for receiving stolen property, which Singh unsuccessfully argued did not qualify as an aggravated felony.

3

order of removal on August 13, 2008, pending our resolution of the petition. Those proceedings are ongoing and the stay remains in place.

In September 2008, Singh received his first *Casas* bond hearing before an immigration judge. Before the hearing began, the government agreed that Singh's wife would not be cross-examined. Despite this stipulation, the IJ allowed the government to cross-examine Mrs. Singh after Singh completed his own testimony. After the close of direct and cross-examination, the IJ also permitted the government to introduce as evidence Singh's Record of Arrest and Prosecution (RAP) sheet. Singh complains that he did not have an opportunity to explain or rebut the evidence presented in his RAP sheet or his wife's cross-examination because both were admitted after the conclusion of his testimony.

When the bond hearing was near its end, the IJ incorrectly stated that Singh bore the burden of proving he was not a flight risk or a danger to the community. Singh immediately objected and informed the IJ that the government bore the burden of proof, and the IJ acknowledged the error. At the conclusion of the hearing, the IJ found that Singh was not a flight risk, a point the government had not disputed. The IJ did, however, find that Singh was a danger to the community and, accordingly, denied Singh's request for release on bond.

In October 2008, the IJ issued a written decision denying Singh bond. Apparently contradicting his oral finding at the September hearing, the IJ concluded that Singh was a flight risk as well as a danger to the community because of his criminal history, his history of failures to appear and the fact that he was under an administratively final order of removal.

Singh appealed to the BIA. He moved to obtain a transcript of the *Casas* bond hearing to support his appeal, in which he raised various due process violations he contended occurred during the hearing. The BIA denied Singh's motion, and ultimately dismissed his appeal, concluding that he was both a danger to the community "given his extensive criminal record," and a flight risk given that he was subject to a final administrative order of removal.

In July 2009, Singh filed a petition for a writ of habeas corpus alleging various procedural and substantive due process violations at his *Casas* bond hearing. The district court denied Singh's petition in February 2010, concluding that it lacked authority to review the IJ's discretionary decision to deny bond and that Singh's allegations of procedural and substantive due process violations were without merit. The court concluded that "Petitioner's procedural due process rights, as afforded to him by *Casas-Castrillon* and *Prieto-Romero* [*v. Clark*, 534 F.3d 1053 (9th Cir. 2008)], were satisfied because Petitioner received an

5

individualized bond hearing before a neutral IJ."  We disagree with the district court's conclusion that this is all that *Casas-Castrillon* and *Prieto-Romero* require. Accordingly, we vacate the dismissal of Singh's habeas petition and remand to the district court with instructions to grant the writ and order Singh's release unless within 45 days of the district court's order the agency provides Singh a new *Casas* hearing applying the standards set forth in this opinion.

## Jurisdiction

We have jurisdiction over Singh's appeal under 28 U.S.C. §§ 1291 and 2253(a).  *See Arango Marquez v. INS*, 346 F.3d 892, 897 (9th Cir. 2003).  Our jurisdiction is consistent with 8 U.S.C. § 1226(e), which provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law.

The Supreme Court held in *Demore* that § 1226(e) does not strip a district court of its traditional habeas jurisdiction, "bar constitutional challenge[s]" or preclude a district court from addressing a habeas petition "challeng[ing] the statutory framework that permits [the petitioner's] detention without bail."  538

6

U.S. at 516-17; *see also Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) (holding that § 1226(e) "does not deprive us of our authority to review statutory and constitutional challenges"); *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003) (noting that *Demore* "read the jurisdiction-limiting provision in § 1226(e) as applying only to review of the Attorney General's discretionary judgment"); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001) (holding, before *Demore* was decided, that "§ 1226(e) does not 'speak[ ] with sufficient clarity to bar jurisdiction pursuant to the general habeas statute'" (alterations in original) (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001))).  In addition, although the Attorney General's "discretionary judgment . . . shall not be subject to review," claims that the discretionary process itself was constitutionally flawed are "cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002).

The conclusion that the district court had habeas jurisdiction to review Singh's claims of constitutional and legal error is also consistent with 8 U.S.C. § 1252(a)(2)(B)(ii).  Like § 1226(e), § 1252(a)(2)(B)(ii) restricts jurisdiction only with respect to the executive's exercise of discretion.  It does not limit habeas jurisdiction over questions of law, *see Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006), *overruled on other grounds by Estrada-Espinoza v. Mukasey*, 546 F.3d

7

1147 (9th Cir. 2008) (en banc), including "application of law to undisputed facts, sometimes referred to as mixed questions of law and fact," *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam).

**Standard of Review**

We review de novo the district court's decision to grant or deny a § 2241 petition for a writ of habeas corpus. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006). We also review de novo due process claims and questions of law raised in immigration proceedings. *See Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). The district court's findings of fact are reviewed for clear error. *See Jones v. Wood*, 207 F.3d 557, 559 (9th Cir. 2000).

**Discussion**

**I. Burden and Standard of Proof**

**A. The Immigration Judge Properly Placed
the Burden of Proof on the Government**

The first issue is whether the immigration judge properly allocated the burden of proof. As we held in *Casas-Castrillon*, the burden of establishing whether detention is justified falls on the government. *See Casas-Castrillon*, 535 F.3d at 951 ("[A]n alien is entitled to release on bond unless the '*government* establishes that he is a flight risk or will be a danger to the community.'" (emphasis added) (quoting *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005))). Singh

8

contends that the IJ failed to adhere to this principle by improperly placing the burden on him to show that he was neither a danger nor a flight risk. We disagree. Although the IJ initially stated that Singh bore the burden of proof, Singh objected and the IJ immediately acknowledged the error. The IJ's written bond memorandum also reflects the proper allocation of the burden of proof to the government. We therefore reject Singh's argument.

## B. The Applicable Standard of Proof is Clear and Convincing Evidence

Neither *Casas-Castrillon* nor any other Ninth Circuit, statutory or regulatory authority specifies the appropriate standard of proof at a *Casas* bond hearing. Singh argues that the government should be held to a clear and convincing evidence standard of proof.[3] Given the substantial liberty interest at stake – Singh,

---

[3] The government points out that Singh did not raise this argument before the BIA, and therefore has not administratively exhausted the claim, but the government does not request that we decline to address the issue. The district court made no mention of an exhaustion problem in its decision. On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement. *See Arango Marquez*, 346 F.3d at 897; *see also Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). We exercise our discretion to waive the requirement and reach the issue. First, a record of administrative appeal is not germane to the purely legal question of what standard is most appropriate for such hearings. Second, relaxation of the requirement in this case will not encourage future habeas petitioners to attempt to bypass the administrative scheme because, once the standard has been set, this issue should cease to arise. Third, administrative review would not preclude the need for judicial review, because litigants would undoubtedly seek this court's determination of whether whatever standard the agency set was correct. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (discussing the factors courts consider when determining whether to require

for example, has been detained for nearly four years – we hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing.

As we said in *Casas-Castrillon*, even where prolonged detention is permissible, "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" 535 F.3d at 950 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Because it is improper to ask the individual to "share equally with society the risk of error when the possible injury to the individual" – deprivation of liberty – is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection. *Addington v. Texas*, 441 U.S. 418, 427 (1979); *see also Tijani*, 430 F.3d at 1244 (Tashima, J., concurring) (explaining that, under *Addington*, the primary function of a standard of proof is to properly "allocate the risk of an erroneous decision among litigants based upon the competing rights and interests involved").

---

prudential exhaustion). Given these circumstances, and given that Singh has already been detained for nearly four years, we conclude that the interests of justice favor waiver.

The Supreme Court has repeatedly reaffirmed the principle that "due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (alterations in original) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (requiring clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"); *Woodby v. INS*, 385 U.S. 276, 285 (1966) (requiring "clear, unequivocal, and convincing" evidence to prove deportability); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (requiring "clear, unequivocal, and convincing" evidence to set aside a naturalization decree (internal quotation marks omitted)). For detainees like Singh, who face years of detention before resolution of their removability, the individual interest at stake is without doubt "particularly important and more substantial than mere loss of money," and therefore a heightened standard of proof is warranted. *Santosky*, 455 U.S. at 756.

We are not persuaded by the government's argument that we should deviate from this principle and apply the lower preponderance of the evidence standard because the liberty interest at stake here is less than for people subject to an initial

11

finding of removal or other types of civil commitment. First, the government argues that its purpose for detaining people like Singh is distinguishable from other sorts of civil commitment because removal is its ultimate goal. The Supreme Court, however, "repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty." *Addington*, 441 U.S. at 425, 427 (emphasis added) (concluding that the individual's interests were "of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence").

Second, the government argues that aliens like Singh should be treated differently because they can end their detention by voluntarily electing to leave the country. As the government conceded at oral argument, however, in some cases aliens who do so will not be permitted to continue challenging their removability from abroad. We are not persuaded that a lower standard of proof is justified by putting people like Singh to the choice of remaining in detention, potentially for years, or leaving the country and abandoning their challenges to removability even though they may have been improperly deemed removable.

Finally, the government argues that Singh's liberty interest is diminished because he has already been afforded a removal hearing. We considered an analogous argument in *Diouf v. Napolitano*, --- F.3d ----, 2011 WL 768077 (9th

12

Cir. 2011), which addressed whether § 1231(a)(6) detainees have a lesser liberty interest in freedom from detention than § 1226(a) detainees because, "[u]nlike a § 1226(a) detainee, a § 1231(a)(6) detainee is subject to a final order of removal and is thus, at least as a theoretical matter, closer to actual removal from the United States." *Id.* at \*4. We concluded that "the government ma[de] too much of this distinction" because "[r]egardless of the stage of the proceedings, the same important interest is at stake – freedom from prolonged detention." *Id.* We reach the same conclusion here. Although "at the margin" Singh's liberty interest may be slightly less than that of someone subject to only an initial finding of removal, fundamentally the same interest in freedom from prolonged detention is at stake. *Id.*

We therefore hold that the clear and convincing evidence standard of proof applies in *Casas* bond hearings.[4] The IJ erred in not holding the government to

---

[4] Statutes and regulations addressing similar issues also employ this heightened standard of proof. For example, "the [government] has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable." 8 U.S.C. § 1229a(c)(3)(A); *see also Woodby*, 385 U.S. at 285 (holding that the government must prove deportability by "clear, unequivocal, and convincing" evidence). Likewise, 8 C.F.R. § 1236.1(c)(3) establishes that when the burden of justifying pre-removal detention has not yet been shifted to the government, criminal aliens must establish by clear and convincing evidence that they are not a danger or flight risk and are likely to appear for any scheduled proceeding. *See also* 8 U.S.C. § 1158(a)(2)(B) (providing that an alien must demonstrate by clear and convincing evidence that his or her asylum application was filed within one year of the alien's

that heightened standard at Singh's *Casas* hearing.

We also conclude that this error was prejudicial. The evidence that Singh was a danger and a flight risk was by no means overwhelming, so the standard of proof could well have affected the outcome of the bond hearing. Significantly, during the hearing the IJ orally announced his finding that Singh was *not* a flight risk, and only later, in the written bond memorandum, found otherwise. Indeed, the government never argued that Singh was a flight risk or presented any evidence to that effect. Consequently, the only evidence the BIA cited for its affirmance of the IJ's conclusion that Singh was a flight risk was the fact – common to *all* detainees afforded *Casas* bond hearings – that Singh had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings. Although this is a relevant factor in the calculus, it alone does not constitute clear and convincing evidence that Singh presented a flight risk justifying denial of bond.

Next, the evidence showing that Singh presented a danger was equivocal. In affirming the denial of bond, the BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely

arrival).

nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.

For these reasons, we cannot conclude that the clear and convincing evidence standard we adopt today would not have affected the outcome of the bond hearing. Accordingly, we remand this case to the district court with instructions to grant the writ and order Singh's release unless within 45 days of the district court's order the agency provides Singh a new *Casas* hearing applying the proper standard.

## II. The Standard of Dangerousness that Must Be Met to Deny Bond

### A. *Casas-Castrillon* and *Matter of Guerra* Contemplate that Criminal History Alone May Be Insufficient to Justify Detention

In *Prieto-Romero* we explained that, to determine whether aliens like Singh who are detained under § 1226(a) present a "flight risk or danger to the community," immigration judges "should . . . look[] to the factors set forth at *Matter of Guerra*, [24 I. & N. Dec. 37, 40 (B.I.A. 2006)]." 534 F.3d at 1065-66. The *Guerra* factor most pertinent to assessing dangerousness directs immigration judges to consider "the alien's criminal record, including the extensiveness of

15

criminal activity, the recency of such activity, and the seriousness of the offenses."

*Guerra*, 24 I. & N. Dec. at 40.[5]

Although an alien's criminal record is surely relevant to a bond assessment,

*Guerra* contemplates that criminal history alone will not always be sufficient to

justify denial of bond on the basis of dangerousness. Rather, the recency and

severity of the offenses must be considered. *See id.* *Casas-Castrillon* likewise

recognized that not every criminal record would support a finding of

dangerousness. Every criminal alien who receives a *Casas* hearing has,

presumably, been convicted of at least one crime giving rise to the removal order.

Nevertheless, *Casas-Castrillon* required individualized bond hearings to ensure

---

[5] *Guerra* discusses nine factors that,

> Immigration Judges may look to . . . in determining whether an alien merits release from bond, as well as the amount of bond that is appropriate. These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

24 I. & N. Dec. at 40.

that "the government's purported interest" in securing the alien's presence at removal and protecting the community from danger "is *actually* served by detention *in [t]his case*," necessarily anticipating that criminal history alone would not always justify detention. *Casas-Castrillon*, 535 F.3d at 949.

Indeed, not all criminal convictions conclusively establish that an alien presents a danger to the community, even where the crimes are serious enough to render the alien removable. *Cf. Foucha*, 504 U.S. at 82-83 (requiring a showing of dangerousness beyond that "of any convicted criminal" to justify civil detention of the criminally insane). For example, some orders of removal may rest on convictions for relatively minor, non-violent offenses such as petty theft and receiving stolen property. Moreover, a conviction could have occurred years ago, and the alien could well have led an entirely law-abiding life since then. In such cases, denial of bond on the basis of criminal history alone may not be warranted.

## B. The Government Need Not Establish "Special Dangerousness" to Justify Denial of Bond

Singh urges us to require the government to prove that a detainee is "a specially dangerous person" to justify denial of bond. The government argues that the *Guerra* standard is sufficient, and no heightened showing of dangerousness is

17

required. We are persuaded by the government's argument.[6] Although we recognize that the "basic purpose" of immigration detention is "assuring the alien's presence at the moment of removal," *Zadvydas*, 533 U.S. at 699, and "protecting the community from dangerous aliens is a . . . secondary statutory purpose" more typically addressed through criminal law, *id.* at 697, we disagree with Singh's argument that *Zadvydas* requires a heightened standard of "special dangerousness."

In deciding that special dangerousness is not required, we draw a distinction between temporary and indefinite detention. Although the Supreme Court noted in *Zadvydas* that it has sanctioned "preventive detention based on dangerousness only when limited to specially dangerous individuals," *Zadvydas* held the confinement at issue unconstitutional in large part because the detention was "not limited, but potentially permanent." *Id.* at 691. Regulations governing continued detention of removable aliens are in accord, providing that an alien must be found "specially dangerous" to permit prolonged post-final order detention "*where there is no significant likelihood of removal in the reasonably foreseeable future*." 8 C.F.R. § 1241.14(a) (emphasis added). Likewise, the Ninth Circuit cases Singh cites in

---

[6] We are not persuaded by the government's threshold argument that we must sustain the district court's determination that this question implicates the immigration judge's exercise of discretion, and is therefore unreviewable under 8 U.S.C. § 1226(e). The question of what standard of dangerousness the government must meet presents a reviewable legal issue. *See Afridi*, 442 F.3d at 1218.

18

support of his argument for a special dangerousness standard address post-removal period *indefinite* detentions.  *See, e.g.*, *Tuan Thai v. Ashcroft*, 366 F.3d 790, 792 (9th Cir. 2004); *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 (9th Cir. 2001). Singh, however, does not allege that he is subject to indefinite detention like the *Zadvydas* detainees who were experiencing "removable-but-unremovable limbo." *Prieto-Romero*, 534 F.3d at 1063.  Unlike in *Zadvydas*, Singh does not contend that the United States lacks a repatriation treaty with Fiji or that Fiji will refuse to accept him.  Accordingly, although Singh's detention "lacks a certain end date," it is not "*indefinite* in the sense the Supreme Court found constitutionally problematic in *Zadvydas*."  *Id.*

*Zadvydas* also focused on the minimal procedural protections afforded to the detainees through administrative proceedings, noting that "the alien bears the burden of proving he is not dangerous, without . . . significant later judicial review."  533 U.S. at 692.  Here, by contrast, the government bears the burden of proof, and must meet a clear and convincing evidence standard of proof.  In addition, we have said that there is jurisdiction for federal habeas courts to review *Casas* bond determinations for constitutional claims and legal error.  There are thus far greater procedural protections in this context than there were in *Zadvydas*.

19

Given that Singh's detention is not indefinite and that procedural protections are in place to safeguard his rights, we hold that due process does not require the government to prove that he presents a "special danger" to justify denial of bond at a *Casas* hearing.

### III. The Government Must Provide Contemporaneous Records of *Casas* Hearings

In conjunction with his appeal of the denial of bond at his *Casas* hearing, Singh asked the BIA to produce a transcript of the hearing. Five days later he received a summary denial of his request. The BIA has long concluded that "[t]here is no right to a transcript of a bond redetermination hearing." *Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (B.I.A. 1977). Current procedures provide instead that a written memorandum decision is prepared only if a detainee appeals the oral bond determination. *See* U.S. Dep't of Justice, Exec. Office for Immig. Rev., *Immigration Court Practice Manual*, § 9.3(e)(iii) & (vii) (2008). Singh argues that this post hoc memorandum is inadequate, and that the absence of a contemporaneous record deprived him of due process. In accordance with *Mathews v. Eldridge*, 424 U.S. 319 (1976), we agree that due process requires a contemporaneous record of *Casas* hearings and that the memorandum decision presently provided is insufficient. We hold that, in lieu of providing a transcript, the immigration court may record *Casas* hearings and make the audio recordings

20

available for appeal upon request. Although we determine that such audio recordings satisfy due process, and are feasible for the government to provide, we do not decide whether they are the only constitutionally adequate alternative to transcripts.

Evaluating the constitutional sufficiency of administrative procedures calls for analysis of the governmental and private interests affected. *See id.* at 334.

> [T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. The private interest here – freedom from prolonged detention – is unquestionably substantial. It is also fundamentally affected by the BIA's refusal to provide transcripts or an adequate substitute. *See Bergerco, U.S.A. v. Shipping Corp. of India*, 896 F.2d 1210, 1215 (9th Cir. 1990) ("[W]here a defendant makes allegations of error which, if true, would be prejudicial, the unavailability of a transcript may make it impossible for the appellate court to determine whether the defendant's substantive rights were affected.").

The memorandum decision provided under existing procedures is insufficient for two reasons. First, it is not created contemporaneously with the

hearing.  Post-hoc reconstruction is inadequate because, "once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding."  *Id.* at 1214.  Second, the memorandum decision is not the functional equivalent of a transcript.  Although a "'record of sufficient completeness' does not translate automatically into a complete verbatim transcript," alternatives are permissible only if they constitute an "equivalent report of the events at trial from which the appellant's contentions arise."  *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971).  The potentially adequate substitutes the Supreme Court has suggested – "[a] statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions" – demonstrate the insufficiency of an after-the-fact decision drafted by an immigration judge in the face of an impending appeal of his or her decision.  *Id.* (internal quotation marks omitted) (quoting *Draper v. Washington*, 372 U.S. 487, 495 (1963)).  The suggested adequate substitutes do, however, demonstrate that an audio recording – a neutral contemporaneous record of the hearing – would provide a "record of sufficient completeness."  Accordingly, the first two *Eldridge* factors weigh heavily in favor of requiring a

neutral contemporaneous record of *Casas* hearings, and we conclude that audio recordings would satisfy due process.

The final *Eldridge* factor, which looks to the burden on the government, also favors Singh. *See Eldridge*, 424 U.S. at 335. Although providing transcripts might constitute a significant burden, the burden of tape recording hearings is much less onerous and much less costly. Indeed, as counsel for the government readily conceded, immigration courts, where bond hearings take place, already are required to be equipped with recording devices and routinely record merits hearings. *See* 8 C.F.R. § 1240.9 (requiring all merits hearings on removal and relief to be recorded). Because the government has the appropriate equipment at hand, tape recording bond hearings as well as merits hearings would present a minimal additional burden. Therefore, given the important liberty interest at stake, the *Eldridge* factors dictate that the government must make available for appeal a contemporaneous record of *Casas* bond hearings. In the absence of a transcript, an audio recording would suffice.

Accordingly, in this case Singh was denied due process. We agree, however, with the district court's conclusion that Singh has not demonstrated prejudice. Although, generally speaking, a transcript or adequate substitute is important for providing meaningful appellate review, Singh has not shown that a

23

recording or transcript would reveal any error that is not sufficiently apparent from the IJ's memorandum decision.

## IV. Other Alleged Errors

We reject Singh's other claims of error. Singh argues that he suffered a due process violation when the IJ permitted the government to cross-examine his wife even though the parties had previously stipulated that her affidavit would be submitted as true without cross-examination. We need not resolve this question because Singh cannot demonstrate prejudice. *See Prieto-Romero*, 534 F.3d at 1066 (subjecting due process violations in immigration proceedings to harmless error review). The government asked Mrs. Singh about two charges of domestic violence that appeared on Singh's criminal record, which was later admitted into evidence. Mrs. Singh testified that she had not brought the charges against her husband, she was not afraid of him and she did not consider him a threat. Given that the prejudicial information about the domestic violence charges was also admitted from another source and, if anything, Mrs. Singh's testimony on cross-examination was otherwise helpful to Singh, he was not prejudiced.

We also reject Singh's argument that his due process rights were violated when the IJ admitted his unauthenticated RAP sheet into evidence. The Federal Rules of Evidence do not apply strictly in immigration removal proceedings. *See,*

24

*e.g.*, *Baliza v. INS*, 709 F.2d 1231, 1233 (9th Cir. 1983) (holding that deportation proceedings are "not . . . bound by strict rules of evidence"). As the BIA acknowledged in its decision, bond hearings are particularly informal in nature. *See Joseph v. Holder*, 600 F.3d 1235, 1242 (9th Cir. 2010); *id.* at 1248 (Graber, J., specially concurring). Furthermore, DHS regulations delineating the rules of procedure for bond determinations in immigration court specify that an immigration judge may rely "upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19(d). Requiring the parties to adhere strictly to the Federal Rules of Evidence would run counter to this regulation and the informal nature of the proceedings.

We reject Singh's related argument that the Immigration and Nationality Act prohibits admission of the unauthenticated RAP sheet because DHS regulations provide that domestic official records "shall be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy." 8 C.F.R. § 287.6(a). His argument fails because § 287.6(a) applies only to a "proceeding under this chapter," which is Chapter I, whereas § 1003.19, which governs bond hearings by immigration judges, is part of Chapter V. Section 1003.41, which governs admissible evidence of criminal

25

convictions at proceedings before an immigration judge held under Chapter V, provides that, in addition to records complying with § 287.6(a), a variety of other specified documents may prove a criminal conviction, as well as "[a]ny other evidence that reasonably indicates the existence of a criminal conviction." 8 C.F.R. § 1003.41(d).

We also conclude that Singh suffered no prejudice when the IJ admitted his RAP sheet without giving him an opportunity to explain or rebut it. Even if this could constitute a due process violation, there is no indication that any of the information in the RAP sheet is false, or that Singh could have provided a mitigating explanation for any of the incidents. On the contrary, the BIA considered Singh's argument and found that even if there was error, it was harmless because Singh's criminal history was already in the record.

## V. Jurisdiction to Consider the Merits of Singh's Petition for Review

Singh also makes a substantive due process argument that the district court should have "look[ed] to the underlying merits of Singh's removal to determine if he has raised a substantial argument that he is unremovable" and therefore entitled to habeas relief. The district court held that it did not have jurisdiction to do so, treating Singh's argument as a "backdoor attempt to have this Court review the

26

underlying merits of Petitioner's removal, which this Court cannot do [under the REAL ID Act, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 231 (2005)]."

The REAL ID Act "expressly eliminated habeas review over all final orders of removal," *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007), and provided that a petition for review in the court of appeals is the "sole and exclusive means for judicial review of an order of removal," 8 U.S.C. § 1252(a)(5). Congress' purpose in enacting the REAL ID Act was to "restor[e] judicial review 'to its former settled forum prior to 1996'" by eliminating suits in district courts and funneling review of removal orders directly to the courts of appeals. *A. Singh*, 499 F.3d at 977 (quoting H.R. Rep. No. 109-72, at 174 (2005), *reprinted in* 2005 U.S.C.C.A.N. 240, 299). The REAL ID Act was thus intended to reinstate a system "abbreviat[ing] the process of judicial review," *id.* at 975, by "effectively limit[ing] all aliens to one bite of the apple with regard to challenging an order of removal," *id.* at 977 (internal quotation marks and emphasis omitted) (quoting *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005)).

Congress has clarified, however, that the REAL ID Act was not intended to "preclude habeas review over challenges to detention that are independent of challenges to removal orders." H.R. Rep. No. 109-72, at 175. Accordingly, the general rule is that "[e]ven post-[REAL ID Act], aliens may continue to bring

27

collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus." *Casas-Castrillon*, 535 F.3d at 946; *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) (holding that "the jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal"). "We must be careful to maintain the distinction Congress made in the REAL ID Act between those challenges that [must be directed to the court of appeals in a petition for review] and those that must be retained in and decided by the district court," so as not to unduly circumscribe district courts' habeas jurisdiction. *Nnadika v. Att'y Gen. of U.S.*, 484 F.3d 626, 632 (3d Cir. 2007). We should also avoid the opposite pitfall, however, and recognize the lack of jurisdiction where a habeas petition "directly implicate[s] the order of removal." *Id.* (discussing *Haider v. Gonzales*, 438 F.3d 902 (8th Cir. 2006), as an example of such a case). The portion of Singh's habeas petition that asks us to consider the underlying merits of his removal order presents an example of this exception to the rule.

Although as a technical matter Singh's habeas petition seeks relief from immigration detention without asking the court to exercise jurisdiction over his final order of removal, this portion of his habeas petition is wholly intertwined with the merits of his removal order. Singh makes the same argument in his

28

habeas petition as he makes in his petition for review – that he is not removable because his convictions do not qualify as aggravated felonies under 8 U.S.C. § 1101(a)(43)(G). *See Haider*, 438 F.3d at 910. Because this portion of his habeas petition "does nothing more than attack the IJ's removal order," *id.*, we lack jurisdiction to review it other than on a petition for review.

We emphasize, however, that determining when the REAL ID Act preempts habeas jurisdiction requires a case-by-case inquiry turning on a practical analysis, and that there are many circumstances in which an alien subject to an order of a removal can properly challenge his immigration detention in a habeas petition without unduly implicating the order of removal. For example, in *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008), we held that habeas jurisdiction existed to review a challenge to immigration detention based on the detainee's argument that he was actually a United States citizen and therefore could not properly be held in custody under 8 U.S.C. § 1226(a), which applies only to "alien[s]." Similarly, in *Casas-Castrillon*, we had jurisdiction to consider whether it was constitutional to detain an alien subject to removal without an individualized bond hearing evaluating his risk of flight or dangerousness. *See* 535 F.3d at 946. And in *A. Singh*, we reasoned that there was jurisdiction to review a claim of ineffective assistance of counsel for failure to timely petition for review because "a

29

successful habeas petition in this case will lead to nothing more than 'a day in court' for Singh, which is consistent with Congressional intent underlying the REAL ID Act." 499 F.3d at 979.

In each of these cases, the habeas challenge to detention had a basis independent of the merits of the petition for review. Even where the bases for the habeas petition and petition for review were related, as in *Flores-Torres*, the detention challenge could stand alone. Here, by contrast, this portion of Singh's habeas challenge rests entirely on his assertion that he has presented a meritorious argument in his petition for review. He explicitly asks the habeas court to evaluate whether "the Government is unlikely to prevail in removal proceedings because [he] has raised a substantial argument that he is not removable" in his pending petition for review. Singh therefore advocates for an odd system wherein the district court would examine the arguments against removal that an alien expects to present to this court in his petition for review, and potentially release him from detention based on a prediction about what this court is likely to conclude when it decides his pending petition for review.

Such a scheme would contravene Congress' express intention to limit review of removal orders to "one day in the court of appeals." *A. Singh*, 499 F.3d at 978 (internal quotation marks omitted) (quoting H.R. Rep. No. 109-72, at 175).

30

Indeed, were we to permit habeas review that "look[s] to the underlying removal claim" as Singh requests, every alien petitioning for review of his removal order could also petition for habeas review on this basis, arguing that his detention is impermissible because he will raise a meritorious argument in his pending petition for review, and his removal is therefore not reasonably foreseeable. This result would severely undermine the streamlined system Congress sought to establish by enacting the REAL ID Act. Although we are sympathetic to Singh's desire for judicial review at the earliest possible moment, the REAL ID Act dictates that such review must take place in the proceedings related to his petition for review, rather than in the present appeal.[7] Whether or not this is the optimal system as a matter of policy, it is consistent with the Suspension Clause because it provides a substitute remedy offering the same scope of review as habeas. *See Puri v. Gonzales*, 464 F.3d 1038, 1041-42 (9th Cir. 2006) (citing *Swain v. Pressley*, 430 U.S. 372, 381 (1977) and *INS v. St. Cyr*, 533 U.S. 289, 314 n.38 (2001)).

---

[7] Singh mischaracterizes *Nadarajah* and *Tijani* when he suggests that they demonstrate that a habeas court can properly consider whether he is likely to prevail in his pending petition for review. In *Nadarajah*, we held that the REAL ID Act was inapplicable because there was not yet any final order of removal, and the REAL ID Act applies to habeas petitions that "involve final orders of removal." 443 F.3d at 1075-76. In *Tijani*, although we were troubled by the length of detention prior to removal, rather than consider the merits of the underlying removal order, we ordered a bond hearing of the sort Singh has already been provided. *See Tijani*, 430 F.3d at 1242.

**Conclusion**

The judgment of the district court is affirmed in part and vacated in part and the matter is remanded to the district court with instructions to grant the writ and order Singh's release unless within 45 days of the district court's order the agency provides Singh a new *Casas* hearing applying the standards set forth in this opinion.

Costs on appeal are awarded to Singh.

**AFFIRMED IN PART, VACATED IN PART and REMANDED.**

## Counsel

Holly S. Cooper, Kelly Martin and Scott Grzenczyk (argued), U.C. Davis Immigration Law Clinic, Davis, California, for appellant.

Joseph P. Russoniello, United States Attorney, Joann Swanson, Chief, Civil Division, Ila C. Deiss, Assistant United States Attorney, San Francisco, California, and William H. Orrick, III (argued), U.S. Department of Justice, Washington, D.C., for appellee.

Judy Rabinovitz, for amicus curiae ACLU Foundation Immigrant's Rights Project, New York, New York, Ahilan T. Arulanantham (argued), for amicus curiae ACLU Foundation of Southern California, Los Angeles, California, and Jayashri Srikantiah, for amicus curiae Stanford Law School Immigrants' Rights Clinic, Stanford, California.