**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

AROLDO ALBERTO RODRIGUEZ
DIAZ,

  *Petitioner-Appellee*,

  v.

MERRICK B. GARLAND, Attorney
General; CHAD F. WOLF; DAVID
JENNINGS; WENDELL
ANDERSON,

  *Respondents-Appellants*.

No. 20-16245

D.C. No. 4:20-cv-
01806-YGR

ORDER

Filed October 12, 2023

Before: Kim McLane Wardlaw, Daniel A. Bress, and
Patrick J. Bumatay, Circuit Judges.

Order;
Statement by Judge Paez

## SUMMARY[*]

## Immigration

The panel denied a petition for panel rehearing, and denied on behalf of the court a petition for rehearing en banc, in a case in which the panel: (1) reversed a judgment of the district court granting Rodriguez Diaz's habeas petition challenging his continued immigration detention under 8 U.S.C. § 1226(a) after an initial bond hearing; and (2) held that due process does not require the agency to provide a second bond hearing at which the government bears the burden of proof by clear and convincing evidence.

In a statement respecting the denial of rehearing en banc, Judge Paez, joined by Judges Murguia, Wardlaw, Gould, Berzon, Koh, Sung, Sanchez, H.A. Thomas, Mendoza, and Desai, wrote that the panel opinion conflicts with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). Judge Paez explained that the panel majority distinguished *Singh* on the basis of the statutory authorization for the immigrant's detention—a distinction on which *Singh*'s constitutional holding does not depend. Judge Paez also wrote that the panel applied the traditional balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), in a manner that conflicts the court's reasoning in *Singh,* and fails to account for the high risk of procedural error and the importance of a strong individual liberty interest. Pointing to the panel majority's express statement that its opinion would not foreclose all as-applied challenges to 8 U.S.C. § 1226(a)'s procedures,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Paez wrote that district courts should continue to engage in an individualized analysis of what process the Constitution requires for each petitioning noncitizen.

---

**ORDER**

Judge Wardlaw voted to grant the petition for panel rehearing and rehearing en banc. Judge Bress and Judge Bumatay voted to deny the petition for panel rehearing and rehearing en banc. The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(a). The petition for panel rehearing and rehearing en banc, Dkt. 104, is DENIED.

---

PAEZ, Circuit Judge, with whom MURGUIA, Chief Judge, and WARDLAW, GOULD, BERZON, KOH, SUNG, SANCHEZ, H.A. THOMAS, MENDOZA, and DESAI, Circuit Judges, join, respecting the denial of rehearing en banc:

I respectfully disagree with the court's refusal to reconsider the panel opinion en banc.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In this case, the majority opinion reversed the district court's

ruling that the Due Process Clause entitled Rodriguez Diaz, who had been detained for over a year, to a bond hearing at which the government must justify his continued detention by clear and convincing evidence.

The opinion conflicts with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), in which our court concluded that noncitizens whose detention becomes prolonged are constitutionally entitled to such a bond hearing. The panel majority distinguished *Singh* on the basis of the statutory authorization for the immigrant's detention—a distinction on which *Singh*'s constitutional holding does not depend.

The panel then applied the traditional balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), in a manner that both conflicts with our court's reasoning in *Singh* and, as the dissent astutely observes, "fails to account for the high risk of procedural error and the importance of Rodriguez Diaz's strong individual liberty interest." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1219 (9th Cir. 2022) (Wardlaw, J., dissenting). Under the panel majority's *Mathews* analysis, the government's interest increases with the length of detention, while the individual's liberty interest does not, raising the question of how a due process challenge to prolonged detention might succeed. The panel majority nonetheless insists that this case should not be read to foreclose habeas relief for noncitizens whose detention under 8 U.S.C. § 1226(a) becomes prolonged. *Id.* at 1213–14.

## I.

The panel majority in this case impermissibly departs from our court's binding application of core due process principles to prolonged detention under § 1226(a). *Singh*

requires certain procedural protections to allay the due process concerns that attend prolonged detention:

> [W]here prolonged detention is permissible, "due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." Because it is improper to ask the individual to "share equally with society the risk of error when the possible injury to the individual"—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection.

638 F.3d at 1203–04 (internal quotation marks omitted) (first quoting *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008), then quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)). Under *Singh*, when an individual's immigration detention becomes prolonged, they are entitled to a bond hearing at which the government bears the burden of proof by clear and convincing evidence.

By the time his habeas petition was adjudicated, Rodriguez Diaz had been detained for fourteen months since his initial bond hearing, at which he bore the burden of proving that he was not a flight risk or a danger to the community. Because Rodriguez Diaz bore the burden at his initial bond hearing, once the district court determined that his detention had become prolonged, due process demanded a bond hearing at which the government was required to

justify his ongoing detention by clear and convincing evidence. *Rodriguez Diaz v. Barr*, 2020 WL 1984301, at *6–8 (N.D. Cal. Apr. 27, 2020).

The panel majority distinguishes *Singh* based on the initial statutory authority under which a noncitizen is detained, a technicality on which *Singh*'s constitutional holding does not rest. Singh, who was detained under 8 U.S.C. § 1226(c), did not receive an initial bond hearing. At the time we decided *Singh*, we understood the government's detention authority to shift to § 1226(a) once proceedings before the Board of Immigration Appeals were complete, and we construed that statute to require a bond hearing. *See Casas-Castrillon*, 535 F.3d at 947–948, 951. Intervening caselaw clarified that noncitizens initially detained under § 1226(c) do not have a statutory right to a bond hearing. *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2022) (abrogating in part *Casas-Castrillon*, 535 F.3d at 950–52). Because Singh was initially detained under § 1226(c), the portion of *Singh* premised on that implied statutory right is no longer good law.

*Singh*'s constitutional holding, however, remains binding law of our court. As the panel majority noted, *Singh* "relied on the Due Process clause in determining the procedural rights available" to noncitizens challenging their prolonged detention. *Rodriguez Diaz*, 53 F.4th at 1202. The panel majority distinguishes *Singh* on the basis that Singh did not have an initial bond hearing, while Rodriguez Diaz did. But in *Singh*, we held that, when detention becomes prolonged, due process requires a bond hearing at which the government must prove by clear and convincing evidence that detention remains justified. Thus, while the difference in detention authority raised the question of whether Rodriguez Diaz's initial bond hearing was sufficient to

justify his detention once that detention became prolonged, *Singh* required the panel to answer that question in the negative.

In *Singh*, we also expressly considered and rejected several of the arguments the panel majority embraces in *Rodriguez Diaz*. First, we refused the government's invitation to distinguish the liberty interest at stake in immigration detention from that of other forms of civil detention, explaining that "[t]he Supreme Court . . . 'repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty.'" *Singh*, 638 F.3d at 1204 (quoting *Addington*, 441 U.S. at 425). We decided that, citizen or not, the issue was reducible to the core principle that "it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant." *Id.* at 1203–04 (quoting *Addington*, 441 U.S. at 427).[1] Our constitutional holding in *Singh* was thus rooted in the Supreme Court's civil detention precedent, which the

---

[1] In addition to *Addington*, we based our decision in *Singh* on other procedural due process cases from both immigration and nonimmigration contexts: *Cooper v. Oklahoma*, 517 U.S. 348, 363 (9th Cir. 1996) ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'") (second alteration in original) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (requiring clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"); *Woodby v. INS*, 385 U.S. 276, 285 (1966) (requiring "clear, unequivocal, and convincing" evidence to prove deportability); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (requiring "clear, unequivocal, and convincing" evidence to set aside a naturalization decree) (internal quotation marks omitted).

*Rodriguez Diaz* panel majority instead rejects as inapplicable to the context of immigration detention. *Rodriguez Diaz*, 53 F.4th at 1210–12.

Second, in *Singh*, we disagreed with the government's position that noncitizens "should be treated differently" than other individuals in civil detention "because they can end their detention by voluntarily electing to leave the country." 638 F.3d at 1204. We explained that a lower standard of proof was not "justified by putting people like Singh to the choice of remaining in detention, potentially for years, or leaving the country and abandoning their challenges to removability even though they may have been improperly deemed removable." *Id.*; *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1060–61 (9th Cir. 2008). By contrast, the *Rodriguez Diaz* panel majority endorses the government's argument that Rodriguez Diaz's decision to pursue his legal rights by appealing an adverse decision diminishes his liberty interest. 53 F.4th at 1207–08.

Third, in *Singh*, we were not persuaded that Singh's liberty interest was diminished because he had already received a removal hearing. We reaffirmed the conclusion that our court had reached in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), when we held that, "[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." *Singh*, 638 F.3d at 1205 (quoting *Diouf*, 634 F.3d at 1087). We additionally held that, whether the noncitizen is in the judicial review phase of a final removal order or has yet to have a hearing on the merits of his case, "fundamentally the same interest in freedom from prolonged detention is at stake." *Id.* Ignoring this holding, the *Rodriguez Diaz* majority embraces the government's argument that Rodriguez Diaz's liberty

interest is diminished by the fact that he has already had a removal hearing. 53 F.4th at 1207–08.

Finally, our reasoning in *Singh* tied the substantiality of Singh's liberty interest to his length of detention, with longer detention reinforcing its weight. 683 F.3d at 1203 ("Given the substantial liberty interest at stake—Singh, for example, has been detained for nearly four years—we hold that the government must prove by clear and convincing evidence that a[] [noncitizen] is a flight risk or a danger to the community to justify denial of bond . . . ."). This reasoning conflicts with the *Rodriguez Diaz* majority's conclusion that the length of a noncitizen's detention weighs more heavily against their liberty interest as it increases. *Rodriguez Diaz*, 53 F.4th at 1207–11.

*Singh* squarely forecloses the panel majority's decision in this case. The opinion incorrectly departs from our binding application of core due process principles to prolonged immigration detention. I therefore disagree with the court's decision not to rehear this case en banc.

## II.

As Judge Wardlaw's dissent explains, the panel opinion employs a flawed analysis of the *Mathews* factors. *See Rodriguez Diaz*, 53 F.4th at 1223–28 (Wardlaw, J., dissenting). To avoid retreading the same ground as the dissent, I raise only a subset of those flaws here, and focus instead on the opinion's impact.

The panel majority undervalues the private interest at stake. It assumes that noncitizens have a lesser interest in avoiding arbitrary detention than citizens do, despite our court's prior rejection of the distinction between immigration and other forms of civil detention in *Singh*;

suggests that lawfully pursuing the right to remain in the United States lessens an individual's interest in freedom from arbitrary detention, despite our rejection of such an argument in *Singh*; and ignores caselaw explaining that an individual's liberty interest increases over the length of their detention.**[2]**   The panel majority also concludes that the government's interest in effectuating removal increases with the length of detention, as the government spends "more resources . . . to secur[e] . . . removal." *Id.* at 1208.**[3]**

Under the panel majority's *Mathews* analysis, then, the government's interest generally increases with the length of a noncitizen's detention under § 1226(a), while the noncitizen's liberty interest does not.  (And the noncitizen's liberty interest is discounted if they exercise their right to appeal an adverse decision, which is likely to extend the length of their detention.)  The likelihood that a noncitizen can show that due process requires review of their detention—that, balancing their liberty interest, the risk of erroneous deprivation, and the government's interest, the noncitizen is entitled to additional procedural safeguards— thus appears to generally decrease over time.  This is deeply concerning, as it creates a real danger that the majority's

---

[2] *See Rodriguez Diaz*, 53 F.4th at 1224 (Wardlaw, J., dissenting).

[3] The majority also suggests it becomes more difficult for the government to effectuate removal as a noncitizen's case progresses. *Id.* at 1208 ("The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent.") (citing *Johnson v. Guzman Chavez*, 594 U.S. ---, 141 S. Ct. 2271, 2290 (2021)).  As the dissent notes, *Johnson* in fact suggests noncitizens detained under § 1226, like Rodriguez Diaz, are less likely to flee because they may yet be found admissible. *See id.* at 1227 (Wardlaw, J., dissenting).  One presumes such individuals exercise their right to appeal with some hope of success.

opinion may be read to effectively eliminate constitutional relief from unreviewed, prolonged § 1226(a) detention, even in the most extreme cases. Because of the flaws in the panel majority's *Mathews* analysis, and the potential effects of those flaws, I seriously disagree with the court's decision not to rehear this case en banc.

## III.

The panel majority expressly states that its opinion "do[es] not foreclose all as-applied challenges to § 1226(a)'s procedures." *Rodriguez Diaz*, 53 F.4th at 1213. As the panel notes, it did not "have . . . occasion to consider the constitutional limits of prolonged immigration detention." *Id.* at 1214.

Taking the panel majority at their word, the majority opinion should not be read to foreclose habeas relief for noncitizens challenging their prolonged detention under § 1226(a). Rather, district courts should continue to engage in an individualized analysis of what process the Constitution requires for each petitioning noncitizen.

What process is due may depend on the individual noncitizen's circumstances. But when an immigrant in removal proceedings is detained for a prolonged period of time, due process requires the government to justify their ongoing physical confinement. Our court so held in *Singh*.

For all of the above reasons, I respectfully, but strongly, disagree with the court's decision not to rehear this case en banc.