**Joel JUDULANG, Petitioner,**

v.

**Michael CHERTOFF, Secretary of the Department of Homeland Security, Alberto Gonzales, Attorney General, Robin Baker, Director of San Diego Field Office, U.S. Immigration and Customs Enforcement, Gabriela Pacheco, Officer–in–Charge, Respondents.**

**Case No. 07CV1414 IEG (CAB).**

United States District Court, S.D. California.

June 10, 2008.

---

Janet Tung, Federal Defenders of San Diego, San Diego, CA, for Petitioner.

Raven M. Norris, U.S. Attorney's Office, San Diego, CA, for Respondents.

## ORDER DIRECTING PETITIONER'S RELEASE UNDER APPROPRIATE CONDITIONS OF SUPERVISION

IRMA E. GONZALEZ, Chief Judge.

### INTRODUCTION

Presently before the Court is Petitioner Joel Judulang's Motion to Enforce This Court's Order. The Court GRANTS the Motion and ORDERS that Petitioner, Joel Judulang, be released under appropriate conditions of supervision.

### BACKGROUND

*I. Factual Background*

#### i. Prior Proceedings

Petitioner, born in the Philippines, has been a lawful permanent resident of the United States since July 4, 1974. On October 11, 1989, Petitioner was convicted of voluntary manslaughter in California state court and sentenced to a six-year suspend-

ed sentence. (Respondents' Return in Opposition to the Petition, Doc. 8, Ex. B.) On June 12, 2003, Petitioner was convicted of grand theft in California state court and sentenced to two years and eight months in prison. (*Id.*, Ex. C.)

On July 7, 2005, Petitioner was taken into custody by Respondents due to the initiation of removal proceedings. He was charged with deportability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii) which allow the deportation of an alien convicted of an aggravated felony and the deportation of an alien convicted of two or more crimes involving moral turpitude.

On September 28, 2005, an immigration judge ordered petitioner removed. (Return, Ex. E.) Petitioner appealed to the Board of Immigration Appeals ("BIA"), which denied his appeal on February 3, 2006, 2006 WL 557842. (Return, Ex. F.) Petitioner filed a petition for review of the BIA's decision in the Ninth Circuit Court of Appeals on February 24, 2006. (Return, Ex. G.) His petition for review, Case No. 06–70986, contests his removability on several grounds. Petitioner concurrently filed a motion for stay of removal, which Respondents did not oppose, and the court granted on July 7, 2006. (Id.) Petitioner filed his opening brief on October 23, 2006, and Respondents filed an opposition on December 7, 2006. (Id.) The Ninth Circuit heard oral argument on June 4, 2007. (Id.) The Ninth Circuit then stayed petitioner's case pending the outcome of another case addressing the same issue raised by Petitioner, *Abebe v. Gonzales.* In a published opinion in *Abebe,* 493 F.3d 1092, 1099 (9th Cir.2007), the court rejected a detainee's argument under Section 212(c) of the Immigration and Nationality Act which was identical to one of petitioner's claims in his appeal. The Ninth Circuit has since withdrawn its opinion pending rehearing of *Abebe* en

banc (Petitioner's Notice, Doc. No. 9). The court cited *Abebe* in denying petitioner's appeal as to his Section 212(c) argument (*id.* at 5), and Petitioner argues the court is likely to rehear his case after rehearing *Abebe* (Doc. No. 11). Petitioner's continued detention has been reviewed twice during the pendency of his Ninth Circuit appeal. On June 6, 2006, Petitioner was informed of ICE's decision *to continue to detain him due to his failure* "to demonstrate" he "will not pose a flight risk." (Return, Ex. I.) On June 5, 2007, Petitioner was informed of the ICE's decision to continue detention by a letter explaining he is "an extreme threat to the community" and thus will remain in ICE custody pending removal from the United States. (Return, Ex. H.)

### ii. Petitioner's Habeas Petition

On August 2, 2007, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. 2241, arguing that his detention at the hands of Respondents was unlawful under the Ninth Circuit's decisions in *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005) and *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir.2006).

On February 12, 2008, 535 F.Supp.2d 1129, this Court granted in part Petitioner's Petition and, relying on the Ninth Circuit's remedy in *Tijani,* ordered Respondents to provide Petitioner with a bail hearing before an immigration judge with the power to grant him bail unless the government were to establish Petitioner as a flight risk or a danger to the community.

On March 28, 2008, Petitioner filed a Motion For Enforcement of This Court's "Order Granting in Part Petition for Writ of Habeas Corpus," asserting Respondents are still unlawfully detaining him and that they have failed to prove he is a flight risk or danger to society. Plaintiff asserts that the untranscribed hearing before an immi-

gration judge held on March 11, 2008 failed to comply with the Court's February 12, 2008 Order or due process. By the time of the hearing, Petitioner had been in continuous custody for over five years.

### iii. Tijani Bail Hearing

Petitioner asserts that after the Court's Order was issued, nothing happened for thirteen days. Then, on February 25, 2008, Petitioner received notice from an ICE officer that he was scheduled to appear at a "custody redetermination hearing before the immigration court" in El Centro, California less than 24 hours later. Petitioner notified counsel immediately who sought and received a continuance to March 11, a date when witnesses would be able to attend.

According to the declarations of both counsel in the case, the following transpired at the March 11, 2008 hearing:

> Immigration Judge Dennis R. James conducted the hearing. The IJ denied Petitioner's request to record proceedings.

> During the course of the hearing, the IJ indicated his reluctance to conduct the hearing at all, stating that he believed that he lacked jurisdiction to conduct the bail hearing, but would conduct the hearing only because he was ordered to do so by this Court. Likewise, the IJ stated that the BIA had no jurisdiction over any appeal, and acting on this belief, crossed out the line on his order that normally would be used to indicate whether appeal was waived or reserved. The IJ instructed the Government and Petitioner to take any actions they believed appropriate at the conclusion of the hearing.

> After initiating the hearing by conducting questioning of Petitioner, the IJ asked Petitioner's counsel to proceed. Upon being reminded that the Government bore the burden of proof, the IJ required the Government to present its case first.

> Apparently in response to Government questions, Petitioner testified about his past criminal convictions. The Government presented no witnesses and introduced no documentary evidence. It made no claim that Petitioner presented a flight risk.

The Government argued Petitioner presented a danger to the community on the basis of his prior convictions. This included a 1989 conviction for manslaughter, for which Petitioner served 228 days in county jail and was sentenced to four years probation, two juvenile adjudications from 1982, a 2001 conviction for driving under the influence, and a 2003 felony conviction for grand theft of the diamond engagement ring Petitioner had given to his then fiancee, for which he was sentenced to two years and eight months in state prison. The Government did not introduce the conviction documents because testimony was elicited and Petitioner admitted to the convictions.

The Government made no claim that Petitioner had engaged in any unlawful or violent behavior in the time since his 2003 conviction.

Petitioner presented testimonial and documentary evidence of his non-violent character, community ties, rehabilitation, family support, and likelihood of successful compliance with supervision.

Petitioner also presented certificates of completion for classes in parenting and relationships and family services courses which he completed while in state prison as well as a certification recognizing his participation while in immigration custody in "Introduction to Vipassana Meditation." Petitioner also presented evidence that while in Re-

spondents' custody, he had been entrusted with a job as Recreation/Sport Room worker, and had been recognized for his outstanding performance with a certificate of achievement.

At the close of the hearing, the Government argued Petitioner had an unbroken record of criminality and could therefore be expected to pose a danger upon release.

The IJ found Petitioner was a "danger to the public." He stated that Petitioner had not been deterred over the years by his prior convictions and found that the strong support of his members did not compel a conclusion Petitioner would be any less dangerous then when he enjoyed the same family support during the time he sustained the manslaughter conviction.

The IJ provided no written findings or reasoning at the time of the hearing. The IJ issued a form order in which the IJ checked the box indicating that "the request for a change in custody status be denied," wrote in the words, "Danger to the Public ... 'No Bond,'" and crossed out the line concerning appeal.

### iv. Immigration Judge Submits Written Findings

On April 23, 2008, Petitioner filed a supplemental exhibit in the form of a letter from the IJ Dennis James, dated April 18, 2008. The letter contains a bond memorandum related to the March 11, 2008 hearing. In the memorandum, the IJ recounts the conduct of the hearing described above. At the end of the memorandum, the IJ notes that Petitioner's "criminal conduct has continued from a young age right up through the arrest, conviction and sentence on the most recent case." In the next sentence, the IJ states he finds the Petitioner is not a flight risk but that Petitioner is a danger to the

community and others and should be held without bond. (*See* Supp. Ex., Doc. 18.)

### II. Procedural Background

Petitioner filed a Motion to Enforce the Court's Order on March 28, 2008. (Doc. No. 14.) Citing procedural and substantive errors by the IJ, Petitioner seeks an order from this Court directing that he be released under appropriate conditions of supervised release. Respondents filed their opposition on April 14, 2008. (Doc. No. 15.) Petitioner filed his reply on April 21, 2008. The Court heard argument on this case, as well as in a case raising similar issues, *Mau v. Chertoff, et. al.,* 07cv2037–IEG (LSP), on April 28, 2008.

### DISCUSSION

### I. Did he Bail Hearing in this Case Satisfy this Court's Order?

#### i. Parties' Arguments

##### 1. Petitioner's Argument

*a. The IJs reliance on past convictions alone cannot support a finding of present dangerousness.*

Petitioner argues that the meager evidence of dangerousness presented at his hearing—the fact of two juvenile adjudications in 1982, a 1989 conviction for voluntary manslaughter, 2001 misdemeanor DUI and 2003 grand theft—fails, as a matter of law, to prove Petitioner poses a present danger to the community.

Petitioner emphasizes that it is not enough for the government to claim dangerousness on the basis of only past crimes, especially ones that are remote in time because "presenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption." *Ngo v. INS,* 192 F.3d 390, 398 (3d Cir.1999) ("Measures must be taken to assess the risk of flight

and danger to the community on a current basis."); *Korkees v. Reno,* 137 F.Supp.2d 590, 598 (M.D.Pa.2001) ("The mere conviction of a crime is not an adequate basis for finding that an individual is a threat to the community.").

Petitioner notes that the presumption of dangerousness applied to him rendered the relief ordered by this Court effectively meaningless. Further, Petitioner notes that the presumption of dangerousness would apply to nearly every petitioner afforded relief under *Tijani* since many such individuals fall within the classification of 8 U.S.C. § 1226(c), which means they have sustained criminal convictions or engaged in past terrorist activities.

Petitioner cites the Ninth Circuit's recent decision in *Hayward v. Marshall,* 512 F.3d 536 (9th Cir.2008) in support of his argument that past convictions are insufficient to establish present dangerousness. In that case, the Ninth Circuit reversed the state's denial of parole to a prisoner serving an indeterminate term for murder because the state's decision was premised on "continued reliance on [the] unchanging circumstances" of the crime committed twenty years ago. The court explained that such reliance "violates due process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness." *Id.* at 546. The court observed that the fact of the prior offense amounted to "no evidence" at all to support a determination that release "would unreasonably endanger public safety." *Id.* at 544, 546.

Petitioner says that like *Hayward,* here, the IJ erred by relying solely on past conduct which was no evidence of present dangerousness.

Petitioner argues that distant in time convictions have little predictive value of likely recidivism. *See e.g., Julian V. Roberts, The Role of criminal Record in the Sentencing Process,* 22 Crime & Justice 303, 335 (1997). *See also* USSG § 4A1.2(e)(3) (imposing 15 year staleness cap on using prior convictions to enhance a federal criminal sentence).

### b. Respondents failed to provide a hearing which comported with due process

Petitioner also asserts he should be released because Respondents failed to provide a the hearing required by this Court's order and the Due Process clause. Petitioner complains the hearing lacked judicial safeguards essential to procedural fairness, including some form of recording or transcription as well as an uninterested decisionmaker.

With respect to the lack of recording or transcription, Petitioner argues that Respondents reconstruction of the hearing is no remedy to the lack of a recording of transcription because "once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding." *Bergerco, U.S.A. v. Shipping Corp. of India Ltd.,* 896 F.2d 1210, 1215 (9th Cir.1990).

### c. Petitioner should be released immediately

Petitioner argues he is entitled to immediate release under appropriate conditions of supervision. Such relief is justified, says Petitioner, because Respondents have failed to make any claim that he poses a flight risk and have failed to prove Petitioner presently poses any kind of articulable danger.

In the alternative, Petitioner asks the Court to hold an evidentiary hearing or refer such a hearing to the assigned magistrate judge. Petitioner argues such a hearing would be more appropriate than proceedings before the IJ since it would involve a neutral, impartial arbiter unaffili-

ated with Respondents and would produce a written record.

### 2. Respondents' Argument

Respondents contend the Government complied with the Court's order because it conducted a bond hearing for Petitioner before an IJ with the authority to grant bail. At the hearing, the Respondents say the Government established Petitioner is a danger to the community and that his continued detention is justified.

Respondents also contend Petitioner has failed to articulate a due process violation because he only challenges a discretionary and factual bond determination. Respondents assert such issues are beyond the scope of habeas review because discretionary decisions and factual determinations are not reviewable in habeas proceedings. *Gutierrez–Chavez v. INS,* 298 F.3d 824, 827 (9th Cir.2002) (attempts to change the discretionary result reached by INS are not within the scope of 2241 and should be denied); *Singh v. Ashcroft,* 351 F.3d 435, 439 (9th Cir.2003) ("The scope of habeas jurisdiction under 28 U.S.C. § 2241 is limited to claims that allege constitutional or statutory error in the removal process.").

Respondents argue that the only claim Petitioner has set forth that potentially raises a due process concern is the allegation that the IJ failed to supply Petitioner with a constitutionally adequate hearing. However, Respondents contend the hearing in this case was constitutionally adequate. With respect to the lack of a written record, Respondents argue this cannot serve as the basis fora due process claim because if Petitioner had appealed the bond determination, a written bond decision would have issued. Moreover, Respondents assert that no hearing transcript is usually made in a bond hearing before the immigration court.

Respondents also contend the IJ applied the proper standard to determine the Petitioner posed a danger to the community and referred to the Government's burden during the bail hearing indicating the IJ placed the burden on the Government. Further, while Respondents concede the IJ did not explicitly state at the hearing that the Government met is burden of proof by "clear and convincing evidence" the IJ stated that based on the evidence in the record, the Government met its burden of proof."

Respondents reject Petitioner's argument that a magistrate judge should be assigned the bail hearing in this case. Petitioner argues that the role of district courts in a civil immigration habeas proceeding is akin to the role of a court of appeals in that the district court reviews the actions of the agency only for constitutional or statutory error. *Gutierrez–Chavez,* 298 F.3d at 829–30 (the scope of jurisdiction under 28 U.S.C. § 2241 is limited to allegations of constitutional or statutory error in the removal process).

In addition to these arguments, Respondents assert Petitioner has failed to exhaust administrative remedies.

### ii. Analysis

#### 1. Jurisdiction

■ No published decision has discussed what jurisdiction, if any, a habeas court retains over a *Tijani* bail hearing which it has ordered. As discussed above, Respondents assert any challenge to custody determinations, aside from challenges related to the procedural adequacy of the hearing, are beyond the scope of habeas review since bond decisions, Respondents argue, are discretionary. Petitioner disagrees, insisting this position is significantly flawed since it would prevent this Court from ensuring that its judgment was enforced.

To the extent the Respondents argue this Court lacks jurisdiction to review the IJ's bond determination, the Court disagrees. The Court finds Respondents view inconsistent with the Ninth Circuit's observation that habeas courts are empowered to make an assessment concerning compliance with their mandates. *See Harvest v. Castro,* 520 F.3d 1055, 1064 (9th Cir.2008). The cases cited by Respondent are unpersuasive, since those cases did not involve a court ordered bail hearing following a finding of indefinite detention. Where, as here, the habeas petitioner has successfully secured a conditional release, that petitioner is entitled to the habeas court's continuing supervision to ensure the government's compliance with the court's order. That is, he is entitled to a judicial determination as to whether the government has established flight risk or dangerousness at the required *Tijani* bail hearing. Otherwise, the habeas court's grant of relief is meaningless. *See Zadvydas v. Davis,* 533 U.S. 678, 692, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (recognizing the serious constitutional problem arising out of a statute that permits an indefinite deprivation of human liberty without the protection of significant later judicial review); *see also United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (upholding pretrial detention under Bail Reform Act of 1984, stressing stringent time limitations, the fact that detention is reserved for the most serious of crimes, the requirement of proof of dangerousness by clear and convincing evidence, and the presence of judicial safeguards).

By Respondents' reasoning, Petitioner's only recourse in the case of government non-compliance would be to file a new *Tijani* petition challenging his detention anew. Imposing such a requirement would be burdensome and inefficient. Accordingly, the Court concludes it possesses authority to review the IJ's hearing for compliance with this Court's order.

### 2. The Tijani Bail Hearing

 It is clear from the declaration of both counsel that the IJ relied exclusively on Petitioner's past criminal record in concluding Petitioner was presently dangerous. The Government apparently made no argument regarding risk of flight and the IJ offered no analysis or comment on this point. It was this dangerousness determination which the IJ indicated justified the denial of bond.

A review of the record reveals that Petitioner's criminal record is indeed extensive. Petitioner's troublesome behavior spans three decades, beginning with juvenile adjudications related to theft and a fight in 1982, continuing with his 1989 voluntary manslaughter conviction, a 2001 DUI conviction, and a 2003 conviction for grand theft involving the theft of a diamond engagement ring from his then-fiancee.

Despite these prior convictions, however, though some quite serious, the Court finds, based on the undisputed description of the evidence, argument, and witnesses, put before the IJ, the government did not meet its burden imposed by this Court of proving Petitioner's present and future dangerousness. Respondents highlight Petitioner's 1989 conviction for voluntary manslaughter as evidence of Petitioner's violent character. Respondents assert that Petitioner's testimony regarding this past crime revealed that he had played an active role in the altercation by jumping on to the car in which the victim was sitting and proceeding to kick out a window on the car. Petitioner vigorously disputes any such testimony was elicited and has furnished three declarations to that effect. In the absence of a record, the Court is unable to resolve the dispute. However, in

any event, given the remoteness of this offense, the Court finds it sheds little light on the issue of Petitioner's potential danger to the community if released. *See Hayward,* 512 F.3d at 544, 546 (old convictions are "no evidence" that release "would unreasonably endanger public safety."); *Ngo,* 192 F.3d at 398 ("The assessment of flight risk and danger to the community must be made on a current basis"). The crime was committed decades ago and there was no evidence that similar conduct, based on Petitioner's demeanor, temperament, or associations, was likely to recur. *Cf. Hayward,* 512 F.3d at 544 (crime committed decades ago and with unusual provocation was unlikely to recur). Similarly, the specialized circumstances of Petitioner's only recent felony conviction, a five year old theft conviction for stealing an engagement ring from his then fianceé—a woman who submitted a declaration on his behalf describing their currently friendly relationship and Petitioner's non-violent nature (*See* Decl. Keri Anderson, Mem. ISO, Ex. D.)—is weak support for the proposition that Petitioner would present a danger to the community at large if released. *See Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491 (holding that preventative detention based on dangerousness should be limited to specially dangerous individuals). Further, the government presented no evidence that Petitioner had committed a disciplinary infraction in immigration custody nor did the government present evidence of any negative behavioral episodes in the past five years in custody. This failure is additional support against a finding of dangerousness. *See id.* at 691, 121 S.Ct. 2491 ("When preventive detention is potentially indefinite, th[e] dangerousness rationale must also be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.").

Where Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate.

■ Finally, the Court rejects Respondents' claim that 8 U.S.C. § 1226 mandates bond in this case be at least $1,500. Such cash bond has not been required for other *Tijani* petitioners who's cases arose under 8 U.S.C. § 1226(c)'s mandatory detention provision. *See e.g., Tijani,* NO. 03cv1624 WQH (RJB) (S.D.Cal. March 13, 2006) (Doc. No. 29.).

Because the Court finds Respondents' failure to meet their burden of establishing Petitioner is a flight risk or a danger to the community mandates his release under appropriate conditions of supervision, the Court need not consider whether other alleged deficiencies in the IJ proceeding, including those related to notice and/or the lack of a written record, violated due process.

### CONCLUSION

The evidence before the IJ failed, as a matter of law, to prove flight risk or danger pursuant to the Court's order. Accordingly, under the facts of this case, Petitioner's continued detention is not authorized by statute. The Court therefore orders Respondents to release Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.

**IT IS SO ORDERED.**