ELIZABETH D. LAPORTE, UNITED STATES MAGISTRATE JUDGE
Petitioner, a native and citizen of the Philippines and lawful permanent resident of the United States, proceeding pro se , filed a federal petition for writ of habeas corpus, under 28 U.S.C. § 2241.[1] Petitioner is currently in immigration custody, and is detained at the Sacramento County Rio Cosumnes Correctional Center in Elk Grove, California. This Court found that Petitioner stated a cognizable claim for relief, and ordered Respondents to show cause why the petition should not be granted. Respondents have filed a motion *1135 to dismiss and a response to the petition. Petitioner has filed an opposition and traverse, and Respondents have filed a reply. For the reasons stated below, Respondents' motion to dismiss is DENIED, and Petitioner's petition is GRANTED.
PROCEDURAL HISTORY
Petitioner is a native and citizen of the Philippines who became a lawful permanent resident of the United States in 1989. Pet. at 3. In 1995, Petitioner was convicted of second degree murder in a California state court, and sentenced to a term of 16 years to life in state prison. Id. On September 18, 2014, Petitioner was found suitable for parole and released. Id. Thereafter, Petitioner was immediately detained by the Immigration and Customs Enforcement ("ICE") agency.
On November 24, 2014, an immigration judge ("IJ") found Petitioner removable under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who, after admission, was convicted of murder, which is an aggravated felony, as defined in INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A). Resp., Ex. A4. The IJ also found Petitioner removable because Petitioner had been convicted of an aggravated felony/crime of violence as defined in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). Id. The IJ further found that Petitioner was not eligible for a waiver, and ordered Petitioner removed. Id.
On March 18, 2015, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the order of removal, affirmed the IJ's decision, and ordered Petitioner removed. Resp. Ex. A5. On March 23, 2015, Petitioner filed a petition for review and a motion to stay the removal in the Ninth Circuit Court of Appeals.
On March 25, 2015, the IJ held a bond hearing to determine whether Petitioner could be released on bond pending the Ninth Circuit's resolution of Petitioner's petition for review. Pet., Ex. I. On April 28, 2015, the IJ issued a memorandum detailing his reasons for denying bond. Resp., Ex. A6. On September 17, 2015, the BIA affirmed the IJ's decision. Id. , Ex. A7.
On September 18, 2015, the Ninth Circuit granted Petitioner's motion to stay the removal pending adjudication of the petition for review. Pet. at 5 and Ex. VIII. The petition for review before the Ninth Circuit has been fully briefed.
The IJ has since conducted two more bond hearings, the last occurring on September 14, 2016, and denied bond. Resp., Exs. A8, A10.
Petitioner filed the underlying Section 2241 petition on April 6, 2016.
DISCUSSION
A. Relevant law
Under 28 U.S.C. § 2241, the district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "No court may set aside any action or decision by the Attorney General ... regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). "Although [ 8 U.S.C.] § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder , 638 F.3d 1196, 1202 (9th Cir. 2011). That is, "aliens may continue to bring collateral legal challenges to the Attorney General's detention authority ... through a petition for habeas corpus." Casas-Castrillon v. Dep't of Homeland Sec. , 535 F.3d 942, 946 (9th Cir. 2008).
Because the Ninth Circuit has stayed Petitioner's removal pending its review of Petitioner's petition for review, the *1136 statutory authority for Petitioner's detention is 8 U.S.C. § 1226(a).[2] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 948 ; Prieto-Romero v. Clark , 534 F.3d 1053, 1059, 1062 (9th Cir. 2008) ("Because Prieto-Romero filed a petition for review and our court entered a stay, his detention is governed by § 1226(a)...."). Section 1226(a) provides the Attorney General with discretionary authority to detain a petitioner or release him on bond or conditional parole pending the completion of removal proceedings. 8 U.S.C. § 1226(a). In making a bond decision under Section 1226(a), an IJ "must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Matter of Guerra , 24 I & N Dec. 37, 40 (BIA 2006) (citing Matter of Patel , 15 I & N Dec. 666 (BIA 1976) ). To aid it his decision, an IJ may consider a number of discretionary factors, including:
(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee persecution or otherwise escape authorities, and (9) the alien's manner of entry to the United States.
Id.
Aliens, like Petitioner, who face prolonged detention while their petitions for review are pending before the Ninth Circuit are entitled to " Casas " bond hearings to establish whether their release would present a danger to the community or a flight risk. Casas-Castrillon , 535 F.3d at 951 ; Prieto-Romero , 534 F.3d at 1065-66 ; Singh , 638 F.3d at 1203. The Ninth Circuit has established the following procedural requirements for Casas hearings: (1) the government must provide contemporaneous records of the hearing; (2) the IJ must place the burden of proof on the government; (3) the government must prove by clear and convincing evidence that the continued detention is justified; and (4) the alien's criminal history alone may be insufficient to meet the dangerousness standard that must be met to deny bond and justify detention, but the government need not establish "special dangerousness" to justify denying bond. Singh , 638 F.3d at 1203-09.
B. Analysis
In the petition, Petitioner alleges that he has been detained since September 2014, and his continued detention is unjustified and unconstitutional. Petitioner also alleges that the IJ was not a neutral decision-maker, and that the Casas hearings violated his right to due process. In response, Respondents have filed a motion to dismiss and a response to Petitioner's allegations. Specifically, Respondents argue that the Court lacks personal jurisdiction over several of the named Respondents, Petitioner fails to state a claim, and the Court lacks jurisdiction to review the IJ's bond determinations.
1. Personal jurisdiction
In the petition, Petitioner named as Respondents: Jeh C. Johnson, the Secretary *1137 of the United States Department of Homeland Security; Loretta Lynch, the Attorney General of the United States; Michael Vaughn, the Field Director of the Sacramento Field Office of the Enforcement and Removal Operations, ICE; and Scott Jones, the Sheriff of the Sacramento County Sheriff's Department. Respondents argue that apart from Scott Jones, the remaining Respondents are not properly named because they are not the immediate custodian of Petitioner.
The Court finds that the decision and analysis in Carmona v. Aitken , No. 14-cv-05321-JSC, 2015 WL 1737839, *2-*5 (N.D. Cal. April 10, 2015), persuasive on this argument. Carmona addressed the issue of whether the "immediate custodian" rule applied to a Section 2241 habeas petition filed by a noncitizen. It discussed Rumsfeld v. Padilla , 542 U.S. 426, 435, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), where the United States Supreme Court analyzed the "immediate custodian" rule, and recognized that the habeas statute "contemplate[s] a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Id. Padilla specifically declined to address the question of whether the Attorney General was a proper respondent in a Section 2241 case filed by an alien pending removal. Id. at 435, 124 S.Ct. 2711 n.8. Carmona reasoned that the "immediate custodian" rule did not apply to habeas petitions filed by an immigrant detainee; rather, the proper respondent should be one with actual authority to effectuate the prisoner's release, such as the Attorney General, or the Department of Homeland Security Secretary. Carmona , 2015 WL 1737839, at *3-*5.
As recognized in Carmona , the Ninth Circuit has also not resolved this issue.[3] Although Respondents have cited other circuit court cases in support of their position, all but one of those cases was decided prior to the issuance of Padilla . Here, Petitioner has named the Attorney General, the Secretary of the Department of Homeland Security, the Warden, and the ICE District Director as Respondents. Like Carmona , this Court recognizes that lower courts have found the Attorney General, the Secretary of the Department of Homeland Security, the Warden, and/or the ICE District Director to be proper respondents in a Section 2241 immigration case. See, e.g. , Jarpa v. Mumford , 211 F.Supp.3d 706, 722-25 (D. Md. 2016) (finding both the Attorney General and the Department of Homeland Security Secretary to be proper respondents, and concluding that even if additional respondents were improper, any error would be harmless); Sanchez-Penunuri v. Longshore , 7 F.Supp.3d 1136, 1148 (D. Colo. 2013) (finding either Attorney General or Department of Homeland Security Secretary proper respondent); Khodr v. Adduci , 697 F.Supp.2d 774, 776 (E.D. Mich. 2010) (finding ICE District Director a proper respondent); Somir v. United States , 354 F.Supp.2d 215, 217-18 (E.D.N.Y. 2005) (concluding that the near complete control the Attorney General possesses over noncitizens facing deportation makes him the *1138 legal custodian of these individuals and therefore a proper respondent).
Because the state of the law is unclear as to whether the Attorney General, Secretary of the Department of Homeland Security, the Warden, and/or the ICE District Director are proper respondents, and at least one of the named Respondents here has the legal power to provide Petitioner with the requested relief, the Court DENIES Respondents' motion to dismiss.
2. Failure to state a claim
Respondents argue that the Court should dismiss the petition under Rule 12(b)(6) because Petitioner cannot show that he is entitled to more process than what he received at his bond determination hearings, and because the Court cannot order Petitioner's release.
As an initial matter, a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Navarro v. Block , 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dep't , 901 F.2d 696, 699 (9th Cir. 1990) ). All material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. Id. Review is limited to the contents of the complaint, see Clegg v. Cult Awareness Network , 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. See Lee v. City of Los Angeles , 250 F.3d 668, 688 (9th Cir. 2001). Here, the Court conducted an initial screening of Petitioner's petition, and based on a review of Petitioner's petition, concluded that Petitioner stated cognizable claims for relief. Thus, to the extent Respondents request dismissal for the failure to state a claim, that request is DENIED.
3. Merits
Respondents' motion also addresses Petitioner's petition on the merits. Respondents first argue that the Court lacks jurisdiction to review the IJ's prior bond determinations because they are discretionary decisions. As acknowledged previously, 8 U.S.C. § 1226(e) bars judicial review of matters within the discretion of the Attorney General. The statute provides, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).
Nonetheless, "[a]lthough § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." Leonardo v. Crawford , 646 F.3d 1157, 1160 (9th Cir. 2011) (internal citation and quotation marks omitted). In particular, "[i]t is now clear that 'a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [ ] bond hearing determinations for constitutional claims and legal error.' " Id. (quoting Singh v. Holder , 638 F.3d 1196, 1200-01 (9th Cir. 2011) ). "In addition, although the Attorney General's discretionary judgment ... shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas...." Singh , 638 F.3d at 1202 (internal citation and quotation marks omitted).
To the extent that Petitioner asks the Court to second-guess the IJ's weighing of the evidence, that claim is directed solely to the IJ's discretion and is *1139 unreviewable. However, as previously stated, Petitioner also raises claims that his continued detention is unjustified and unconstitutional, that the IJ was not a neutral decision-maker, and that Petitioner did not receive an individualized assessment, nor was there clear and convincing evidence to support the denial of bond, in violation of his due process rights. These claims allege that the discretionary process was constitutionally flawed. See Santosky v. Kramer , 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (directing courts to consider certain factors "to determine whether a particular standard of proof in a particular proceeding satisfies due process"); Singh , 638 F.3d at 1201-02 (reversing a district court which found it did not have jurisdiction over a petition challenging the burden of proof applied in a bond hearing); Judulang v. Chertoff , 562 F.Supp.2d 1119, 1127 (S.D. Cal. 2008) ("The evidence before the IJ failed, as a matter of law, to prove flight risk or danger.... Accordingly, under the facts of this case, [the p]etitioner's continued detention is not authorized by statute."). Accordingly, Petitioner's claims are reviewable by this Court.
First, Petitioner alleges that the IJ was not a neutral decision-maker because the IJ presided over Petitioner's removal proceeding as well as his bond hearing. Pet. at 6. However, "there is nothing improper with the same IJ presiding over both the removal and bond proceedings." Dela Cruz v. Napolitano , 764 F.Supp.2d 1197, 1204 (S.D. Cal. 2011) (citing Joseph v. Holder , 600 F.3d 1235, 1242 (9th Cir. 2010) (noting "the IJ properly presided over both [the removal and bond] proceedings") ). Further, the immigration regulations treat bond determination hearings "separate and apart" from any "deportation or removal proceeding or hearing." 8 C.F.R. § 1003.19(d) ; In Re Adeniji , 22 I. & N. Dec. 1102, 1115 (BIA 1999) (declining to consider information presented during respondent's removal hearing in connection with his appeal of a bond determination because "[c]ustody proceedings must be kept separate and apart from, and must form no part of, removal proceedings."). Here, there is no evidence that the IJ co-mingled information from the two proceedings, and no evidence that the IJ acted in his personal self-interest in denying Petitioner bond. Accordingly, the Court concludes that the bond hearing was not procedurally deficient merely because the same IJ presided over both the bond and the removal proceedings.
Second, Petitioner argues that there was not clear and convincing evidence to support the denial of bond. The Court has reviewed the transcript from Petitioner's bond hearing on March 25, 2015. Pet., Ex. I. During the hearing, Petitioner indicated that he was married with a 14-year old step-son. Id. , Ex. I at 4. Petitioner did not own any property or business in the U.S. Id. Petitioner's father is a U.S. citizen, and his mother is a legal permanent resident, and both parents live in San Diego, California. Id. at 4-5. Petitioner wishes to remain in the United States. Id. at 6. The government questioned Petitioner about the facts underlying Petitioner's 1995 conviction. Id. at 6-8. Petitioner asserted that he had no fear of returning to the Philippines. Petitioner's wife and Petitioner's former cell mate both testified on behalf of Petitioner. Id. at 9-12.
In its April 23, 2015 bond memorandum, the IJ summarized the testimony elicited from the bond hearing, and understood that the government bore the burden of showing by clear and convincing evidence that Petitioner was either a danger to the community or a risk of nonappearance, or both. Dkt. No. 12-1 at 25-26. The IJ found it unnecessary to determine whether Petitioner was a danger to others, concluding instead that Petitioner was "an acute risk of nonappearance and an exceedingly poor *1140 bail risk." Id. at 26. The IJ observed that Petitioner owned no assets or property in the United States, and had been ordered removed by both the IJ and the BIA. Id. The IJ appeared to place significant emphasis on the fact that Petitioner had been ordered removed, and that Petitioner's only issue in his petition for review involved a claim that has already been rejected by the U.S. Supreme Court. Id. at 27. The IJ reasoned that Petitioner had no incentive to report for removal because he had family ties to the United States, and wished to stay in the U.S. Id. The IJ concluded that "under the specific facts of this case, the government met its burden to show by clear and convincing evidence that [Petitioner] is a risk of flight and nonappearance, and that no condition or combination of conditions will reasonably assure his future appearance." Id. at 27-28. Petitioner moved for reconsideration of this decision, and the motion was denied. Petitioner unsuccessfully appealed this decision to the BIA.
Following Petitioner's second bond redetermination hearing, the IJ issued a second bond memorandum, dated January 29, 2016, stating his reasons for denying bond. Dkt. No. 7 at 71-72. The IJ stated that he did not believe that Petitioner would prefer to remain incarcerated while Petitioner litigated his removal order, rather than live comfortably in the Philippines. Id. The IJ also believed that he had no authority to order an ankle bracelet for Petitioner, and that even if he did, such an alternative would be "insufficient to assure [Petitioner's] appearance and improper in light of the gravity of [Petitioner's] criminal history."[4] Id. at 72. The IJ concluded, "What [Petitioner's] position comes down to is a belief that, despite having been found culpable for the murder of a human being, and despite having been ordered removed, he should be allowed to live in comfort with his family and friends in the United States while his case is reviewed." Id. As the BIA noted, the IJ appeared to rest his decision primarily on the fact that Petitioner is subject to a final order of removal and lacked incentive to appear for removal. Dkt. No. 7-1 at 25.
To satisfy the clear and convincing standard, overwhelming evidence is not required. See Rodriguez v. Robbins , 804 F.3d 1060, 1090 (9th Cir. 2015) (" Rodriguez III "), cert. granted by Jennings v. Rodriguez , --- U.S. ----, 136 S.Ct. 2489, 195 L.Ed.2d 821 (2016). Rather, it is an "intermediate burden of proof" that is above "preponderance of the evidence" but below that required to sustain a criminal charge. Id. at 1071. Such a standard ensures that "after a lengthy period of detention, the government continues to have a legitimate interest in the further deprivation of an individual's liberty." Id. at 1090. In addition, the Ninth Circuit has stated that there is a difference "between detention being authorized and being necessary as to any particular person." Casas , 535 F.3d at 949. "Bond hearings do not restrict the government's legitimate authority to detain inadmissible or deportable non-citizens; rather, they merely require the government to 'justify denial of bond' with clear and convincing 'evidence that an alien is a flight risk or danger to the community.' " Rodriguez III , 804 F.3d at 1077 (quoting Singh , 638 F.3d at 1203 ).
*1141 "[I]n the end, the government is required only to establish that it has a legitimate interest reasonably related to continued detention; the discretion to release a non-citizen on bond or other conditions remains soundly in the judgment of the immigration judges the Department of Justice employs." Id. In addition, the Ninth Circuit has stated that the longer a non-citizen is detained, the more robust the procedural protections should be. See id. at 1089 ("a non-citizen detained for one or more years is entitled to greater solicitude than a non-citizen detained for six months.").
Here, the Court is not persuaded that clear and convincing evidence supports the IJ's flight risk finding. At neither bond hearing did the government argue that Petitioner was a flight risk, nor did the government present any evidence to that effect. In addition, the IJ appeared to deny bond mainly because Petitioner had been ordered removed, and Petitioner's claim in his petition for review to the Ninth Circuit was unlikely to succeed. The IJ did not address other factors such as those set forth in Matter of Guerra , 24 I & N Dec. 37, 40 (BIA 2006). For example, Petitioner's criminal history is relatively serious (second degree murder), although not extensive, and most of the time since he became a lawful permanent resident he was incarcerated. The IJ also did not address Petitioner's record of appearance in court.
An IJ may choose to give greater weight to one factor over another in making his decision on whether an alien would be a flight risk, as long as the decision is reasonable. See id. In this case, Petitioner has been detained by ICE since September 2014. Although Petitioner proffered that he should be released on bond because he has resided in the United States for a lengthy amount of time, he has a fixed address, and he has family ties, the IJ concluded that those facts provided little to no knowledge as to whether Petitioner was likely to report for removal. Indeed, the IJ's decision relied on none of the Matter of Guerra factors in denying bond. Instead, the IJ reasoned that Petitioner had no assets or property ties in the United States, and placed significant emphasis upon the facts that Petitioner had already been ordered removed by the IJ and BIA and was unlikely to succeed on his petition for review in the Ninth Circuit. However, the fact of an order of removal is not, by itself, sufficient to deny bond. See Singh , 638 F.3d at 1205 ("[T]he only evidence the BIA cited for its affirmance of the IJ's conclusion that Singh was a flight risk was the fact-common to all detainees afforded Casas bond hearings-that Singh had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings. Although this is a relevant factor in the calculus, it alone does not constitute clear and convincing evidence that Singh presented a flight risk justifying denial of bond."). To deny bond, "the government is required [ ] to establish that it has a legitimate interest reasonably related to continued detention." Rodriguez III , 804 F.3d at 1077. Here, the record before this Court does not show that the IJ's decision rested on "clear and convincing" evidence that Petitioner was a flight risk justifying denial of bond. Compare Gianello v. Holder , No. 11-CV-0180-LAB (JMA), 2014 WL 1255884, at *2-*3 (S.D. Cal. March 23, 2014) (finding clear and convincing evidence in IJ's decision to deny bond when the petitioner posed a different person, gave false documents in order to enter the county, had inconsistent stories, appeared deceitful, and concluding that six of the nine Guerra factors tended to show that petitioner was a flight risk).[5]
*1142 Accordingly, because Petitioner's bond hearings were constitutionally deficient-that is, based on this record, the government's evidence did not establish clearly and convincingly that Petitioner was a poor bail risk-Petitioner's petition is GRANTED.
CONCLUSION
Respondents' motion to dismiss is DENIED. Petitioner's petition for writ of habeas corpus is GRANTED. Petitioner is ordered to be released unless within sixty days of the filing date of this order, unless the agency provides Petitioner with a new bond hearing before an IJ. At the hearing, the IJ shall consider that Petitioner has been detained for over two years, and if the government does not show clear and convincing evidence that Petitioner either presents a danger to the community or a flight risk to justify continued detention, the IJ must consider reasonable conditions of supervision. See Rodriguez III , 804 F.3d at 1087-88, 1089.
The Clerk shall terminate all pending motions and close the file.
IT IS SO ORDERED.

The parties have consented to magistrate judge jurisdiction. Dkt. Nos. 2, 9.

In contrast, "§ 1226(c)'s mandatory detention provisions apply ... until the BIA affirms a removal order." Rodriguez v. Robbins , 715 F.3d 1127, 1135 (9th Cir. 2013) (citing Casas-Castrillon , 535 F.3d at 948 ).

The Ninth Circuit in Armentero v. INS , 340 F.3d 1058, 1069 (9th Cir. 2003) (Armentero I ), had concluded that the immediate custodian rule did not apply in a situation where the local or state warden lacked any legal power to release the detainee. It ultimately determined that the Attorney General and the Secretary of the Department of Homeland Security were proper respondents. Id. at 1071, 1073. However, the Ninth Circuit subsequently withdrew Armentero I , and dismissed the appeal based on the fugitive disentitlement doctrine, which prohibits considering the appeal of one who flees from custody during its pendency. Armentero v. INS , 412 F.3d 1088 (9th Cir. 2005) (Armentero II ).

The Court notes, however, that "federal regulations authorize IJs to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released and to 'ameliorat[e] the conditions' of release imposed by DHS. 8 C.F.R. § 1236.1(d)(1). Accordingly, if DHS detains a non-citizen, an IJ is already empowered to ameliorat[e] the conditions by imposing a less restrictive means of supervision than detention."Rodriguez III , 804 F.3d at 1088.

In Respondents' reply, they argue that the petition is now moot, or unripe, because Petitioner has already received a third bond redetermination hearing, and therefore there is no more case or controversy. However, an exception to the mootness doctrine exists where a claim is "capable of repetition yet evading review." Native Village of Noatak v. Blatchford , 38 F.3d 1505, 1509 (9th Cir. 1994). The Court finds the exception applicable here. See Porter v. Jones , 319 F.3d 483, 489-90 (9th Cir. 2003) (recognizing that the exception is limited to extraordinary circumstances where two elements combine: (1) the challenged action is of limited duration, too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.).