JAMES L. ROBART, United States District Judge
The court has conducted a de novo review of the challenged parts of the Report and Recommendation of the Honorable Mary Alice Theiler United States Magistrate Judge (Dkt. # 13). In doing so it has reviewed Petitioner's Objections (Dkt. # 15), Respondents' Objections (Dkt. # 14), Petitioner's Response to Respondents' Objections (Dkt. # 17), Respondents' Responses to Petitioner's Objections (Dkt. # 16), and the remaining record. The Court finds and ORDERS:
(1) The Court ADOPTS in part and AMENDS in part the Report and Recommendation;
(2) The Government's motion to dismiss, Dkt. 4, is GRANTED in part and DENIED in part;
(3) Petitioner's habeas petition, Dkt. 1, is GRANTED in part and DENIED in part;
(4) Petitioner's request for immediate release is denied. However, the Government shall release petitioner on appropriate conditions within 45 days unless, at a new bond hearing, it presents clear and convincing evidence that he presents a current flight risk or danger to the community; and
(5) The Clerk is directed to send copies of this Order to the parties and to Judge Theiler.
REPORT AND RECOMMENDATION
Mary Alice Theiler, United States Magistrate Judge
I. INTRODUCTION
This is an immigration habeas action brought under 28 U.S.C. § 2241. Petitioner, a native and citizen of El Salvador, has been in the custody of U.S. Immigration and Customs Enforcement ("ICE") for over six and a half years while his removal proceedings have been pending. At each of his five bond hearings, the immigration judge ("IJ") concluded that no amount of bond or conditions of release could prevent petitioner's flight or protect the community from the danger he presents. Her justification: DUIs from 2005 and 2007, and a DUI/vehicular assault conviction from 2011. While certainly serious crimes, the most severe criminal sentence he received was three months of work release and 12 months of probation. He was never sentenced to any jail time. The convictions are *1027 the basis for his exceedingly lengthy civil detention.
While detention pending removal proceedings is constitutionally permissible, it must comport with due process. Among other requirements, the Government must justify prolonged detention with clear and convincing evidence that the noncitizen presents a current flight risk or danger to the community. Dangerousness cannot be based on criminal history alone; the severity and recency of the criminal conduct must be taken into account. The IJ also must consider changes in circumstances that would make recidivism less likely. Finally, although the Court cannot review the IJ's discretionary judgment, it may review the record for constitutional claims and legal error and to ensure that the clear and convincing evidence standard is met as a matter of law.
In this case, petitioner seeks release from immigration detention or a new bond hearing. The Government moves to dismiss. Having considered the parties' submissions, the balance of the record, and the governing law, the Court concludes that petitioner is not entitled to release but is entitled to a new bond hearing.[1] The IJ erred as a matter of law in failing to consider petitioner's flight risk and dangerousness on a current basis. In addition, given that petitioner's only criminal history involves alcohol and driving, and there is evidence in the record regarding petitioner's sobriety and willingness to refrain from driving if he is released, the Court concludes that there is not clear and convincing evidence in the record that justifies his continued detention.
Accordingly, the Court recommends that both the Government's motion to dismiss and petitioner's habeas petition be GRANTED in part and DENIED in part. Petitioner's request for immediate release should be denied, but the Government should be ordered to release him on appropriate conditions within 30 days unless, at a new bond hearing, it presents clear and convincing evidence that he presents a current flight risk or danger to the community.
II. BACKGROUND
Petitioner is a native and citizen of El Salvador who initially entered the United States without inspection in July 2001. Dkt. 5-1 at 2. He lived in California, Texas, and South Carolina before moving to Washington, where his mother was living, in August 2009. Id. at 12-15. While he was living in South Carolina, he committed misdemeanor DUIs in 2005 and 2007. Id. at 31. On August 14, 2011, petitioner again drove under the influence, this time causing an accident that injured a passenger in the other car. Id. at 22-29, 91. Petitioner drove away from the scene but returned after witnesses caught up with him five blocks away. Id. at 91. Petitioner subsequently pleaded guilty to DUI/vehicular assault and was sentenced to three months of work release and 12 months of parole. Id. at 17, 95-116.
On June 7, 2012, ICE officers arrested petitioner at his home in Burien, Washington, and transferred him to the Northwest Detention Center. Id. at 3, 123. He was served with a Notice to Appear, charging him as removable because he was not lawfully admitted or paroled into the country. Id. at 118, 120-21. As discussed below, petitioner's removal proceedings are ongoing and he has remained in detention since his arrest over six and a half years ago.
*1028 A. Petitioner's removal proceedings
On July 10, 2012, petitioner conceded removability from the United States. Id. at 127-28. He subsequently applied for cancellation of removal. Id. at 136-37, 146. On August 1, 2013, an IJ held a hearing on his application. Id. at 6-89. In a written decision dated August 28, 2013, she found that petitioner presented credible testimony and was statutorily eligible for cancellation of removal, but she denied his application as a matter of discretion based on his criminal history, finding that he "engaged in a pattern of potentially dangerous criminal misconduct in the United States." Id. at 152-58. The IJ went on, "His criminal misconduct escalated and culminated in injury to others and damage to property. The driving offenses involving alcohol span a number of years with the last offense being recent and serious .... [He] has shown a disregard for the laws in the United States and for the safety of others." Id. at 157-58. The IJ also denied petitioner's request for post conclusion voluntary departure and ordered him to be removed to El Salvador. Id. at 158-59.
Petitioner appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal. Id. at 162-64. Petitioner filed a petition for review in the Ninth Circuit, which stayed his removal. Id. at 166-67. On August 12, 2014, the Ninth Circuit granted the government's unopposed motion to remand the case to the BIA to consider whether the IJ properly addressed the issue of petitioner's mental competency. Id. at 169. On January 30, 2015, the BIA remanded the matter to the IJ for further proceedings. Id. at 172.
On August 3, 2015, the IJ held a hearing and, after considering all of the evidence including the parties' submissions regarding petitioner's mental competency, the IJ found that petitioner was competent to proceed pro se and again denied his application for cancellation of removal and request for voluntary departure. Id. at 190-92, 201-02, 205. The BIA adopted the IJ's competency evaluation. Id. at 212. Petitioner sought review with the Ninth Circuit. See id. at 207. On January 3, 2018, the Ninth Circuit found that the BIA abused its discretion by affirming the IJ's inaccurate factual findings about the mental health evidence in the record and the IJ's failure to apply the correct standards. Id. at 207-17. The court remanded the case to the BIA with instructions to send the case back to the IJ for a competency evaluation based on current mental health reviews and medical records. Id. at 217.
On September 17, 2018, the IJ held a third hearing and again found petitioner competent and denied his application for relief from removal. Id. at 220-31. Petitioner's appeal to the BIA is currently pending. See Dkts. 8-3, 8-4.
B. Petitioner's custody determinations
Petitioner has received five bond hearings, all before the same IJ. He was represented by counsel at the first and appeared pro se at the others. Following the last bond hearing, ICE reviewed petitioner's custody status. Most recently, petitioner requested a new bond hearing based on changed circumstances but was denied. The details of these events are described below.
1. Bond hearings
On August 6, 2012, the IJ held a bond hearing pursuant to 8 U.S.C. § 1226(a) and denied bond. Dkt. 5-1 at 233. There are no details in the record regarding this hearing.
On June 11, 2014, petitioner received a *1029 Casas bond hearing.[2] Dkt. 5-1 at 237, 239. The IJ placed the burden on the government to justify continued detention. Id. at 242. The IJ denied bond, finding that petitioner was a flight risk and danger to the community based on his criminal history. Id. at 239, 243-45. In the IJ's written memorandum, she explained that petitioner "engaged in a pattern of dangerous criminal misconduct" and that his driving offenses involving alcohol spanned a number of years and culminated in the latest offense, which was "recent and serious." Id. at 245. Petitioner appealed to the BIA, which dismissed his appeal.[3] Id. at 247-55.
On August 21, 2014, the IJ held a Franco-Gonzalez bond hearing.[4] Dkt. 5-1 at 260-65. The IJ placed the burden on the government to justify continued detention. Id. at 262. The IJ found that petitioner's mental health issues did not impair his ability to understand the nature and purpose of the proceedings. Id. at 263. The IJ denied bond, finding that the government met its burden based on petitioner's criminal history and limited forms of relief from removal. Id. at 264, 267. Petitioner appealed to the BIA, which remanded for further findings on petitioner's competency to represent himself in these proceedings. Id. at 270.
On March 12, 2015, petitioner had another Franco-Gonzalez bond hearing. Id. at 272-77. The IJ again found petitioner competent and denied bond based on his criminal history. Id. at 276, 279, 282-85. The IJ reiterated the same analysis as in the Casas hearing, namely that petitioner "engaged in a pattern of dangerous criminal misconduct" and that his driving offenses involving alcohol spanned a number of years and culminated in the latest offense, which was "recent and serious." Id. at 284. The BIA dismissed petitioner's appeal, finding that the IJ's competency determination was not clearly erroneous and that the IJ properly found that the government presented clear and convincing evidence that petitioner presents a danger to the community based on his criminal history. Id. at 288. The BIA did not address the IJ's flight risk finding.
On December 4, 2015, petitioner received a Rodriguez bond hearing.[5] Dkt. 6-1. The IJ found, based on the entirety of the evidence in the record, that the government met its burden and denied bond. Dkt. 6-1; Dkt. 5-1 at 290; Dkt. 6-2. The IJ again relied on the same analysis as her previous opinions, explaining that petitioner "engaged in a pattern of dangerous criminal misconduct" and that his driving offenses involving alcohol spanned a number of years and culminated in the latest offense, which was "recent and serious." Dkt. 6-2 at 6. The IJ also noted that DHS had informed the court that petitioner was subject to administrative action at the Northwest Detention Center for sending an inappropriate and sexually explicit letter *1030 to a female mental health provider.[6] Id. Petitioner filed an appeal, but the parties have not provided the Court with a copy of the BIA's decision. See Dkt. 5-1 at 292-98.
2. ICE's custody review
On April 1, 2016, ICE conducted a custody review and issued a decision to continue detention, concluding that petitioner would be a risk to the community and asserting that his removal is expected in the reasonably foreseeable future. Id. at 312. ICE did not find that petitioner presents a flight risk. See id.
3. Petitioner's motion for a bond redetermination
On July 18, 2018, petitioner filed a motion, through counsel, for a bond redetermination based on changed circumstances. Dkt. 8-1; see also 8 C.F.R. § 1003.19(e) (once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination). The motion included new information regarding his wife's disabilities, his mother's health problems, his sobriety, and his plans to continue substance abuse treatment upon his release. See Dkt. 8-1. He also argued that the length of his detention warranted reconsideration of bond. Id. On August 2, 2018, the IJ denied petitioner's motion, declining to find materially changed circumstances. Dkt. 8-2. The record does not indicate whether petitioner appealed this determination.
C. Petitioner's detention
Until January 2016, petitioner was housed at the Northwest Detention Center. Dkt. 8-1 at 11. He was employed through the facility, received mental health counseling once or twice a week, and regularly took prescription medication for depression. Id. He also received visits from his wife and stepson approximately twice a month and had daily phone contact with them. Id.
On January 6, 2016, he was transferred to the Northern Oregon Regional Correctional Facility ("NORCOR") in The Dalles, Oregon. Id. He was housed in a dorm room alongside jail inmates, some of whom fought constantly. Id. Petitioner worried for his safety and described the move as "extremely traumatic." Id. His medical history, including the notes from his counselor and his prescriptions, were not provided to the facility, although he eventually was provided with a prescription for an antidepressant. Id. While at NORCOR, he did not have any contact-in person or by phone-with his wife or stepson, or access to an attorney. Id.
In March or April 2016, petitioner was transferred to the Etowah County Detention Center in Alabama, a trip that took approximately two weeks. Id. at 12. Due to overcrowding-not safety or behavioral concerns-he spent his first 70 days there in solitary confinement where he was locked down 24 hours per day. Id. After that, he was housed with jail inmates. Id. He was constantly worried about his safety and at one point, he was attacked. Id. When he reported the attack to corrections officers, nothing was done. Id. Petitioner also received inadequate health care. Id. He had an ear infection, which jail staff refused to treat for weeks, and he now has permanent hearing damage in one ear. Id.
*1031 at 12-13. He continued to have mental health difficulties, which were treated with medication but no counseling. Id. at 12. While at Etowah, petitioner was able to have telephone contact with his mother, but for some reason his wife's number was blocked and jail staff were unable to unblock the number. Id. Etowah staff also constantly pressured plaintiff to sign his deportation order and abandon his attempts to remain in the United States with his wife and mother. Id.
On January 30, 2018, petitioner was transferred back to the Northwest Detention Center. Id. at 13. He resumed his work at the facility and started counseling again. Id. Although petitioner is back in Tacoma, his wife has been unable to visit him because of her own health problems. Id.
III. DISCUSSION
This action raises two primary issues: whether petitioner's continued detention violates the Fifth Amendment's Due Process Clause and/or the Eighth Amendment's prohibition on cruel and unusual punishment. The Court discusses each issue in turn.
A. Fifth Amendment
Petitioner contends that his continued detention violates due process because the IJ and BIA erred as a matter of law in denying bond and because his detention has become unreasonable and unjustified. Federal district courts have habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error. Singh v. Holder , 638 F.3d 1196, 1202 (9th Cir. 2011). Although an IJ's discretionary judgment may not be judicially reviewed, 8 U.S.C. § 1226(e), "claims that the discretionary process itself was constitutionally flawed are cognizable...." Singh , 638 F.3d at 1202. Thus, the Court has jurisdiction over petitioner's claims. As discussed below, the IJ erred as a matter of law and therefore petitioner is entitled to a new bond hearing; he is not, however, entitled to release.
1. Statutory framework for immigration detention
Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens, such as petitioner, who are in removal proceedings. 8 U.S.C. § 1226 ; see also Demore v. Kim , 538 U.S. 510, 530, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[7] 8 U.S.C. § 1226.
When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. See 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of *1032 the IJ that he warrants release on bond. See In re Guerra , 24 I. & N. Dec. 37, 40 (B.I.A. 2006). Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).
If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. §§ 236.1(d)(3), 1003.19(f). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. Leonardo v. Crawford , 646 F.3d 1157, 1159-61 (9th Cir. 2011) ; Sun v. Ashcroft , 370 F.3d 932, 941 (9th Cir. 2004).
Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence. Rodriguez v. Robbins ("Rodriguez III "), 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015), rev'd sub nom Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). In Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018), the Supreme Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text ... even remotely supports the imposition of" periodic bond hearings where the government bears the burden. Id. at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings, and remanded to the Ninth Circuit for consideration of that question. The Ninth Circuit has remanded to the district court to determine the minimum requirements of due process, including reassessing and reconsidering both the clear and convincing evidence standard and the six-month bond hearing requirement. Rodriguez v. Marin ("Rodriguez IV "), 909 F.3d 252, 255-56 (9th Cir. 2018).
2. Due process requirements for bond hearings
To detain a noncitizen for a prolonged period of time while removal proceedings are pending, due process requires the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.[8]
*1033 Singh v. Holder , 638 F.3d 1196, 1208 (9th Cir. 2011) ; see also Ngo v. INS , 192 F.3d 390, 398 (3d Cir. 1999) ("Measures must be taken to assess the risk of flight and danger to the community on a current basis. ") (emphasis added).
To make this determination, the IJ may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. Guerra , 20 I. & N. Dec. at 40; see also Singh , 638 F.3d at 1206.
The Ninth Circuit has provided additional guidance: "Although [a noncitizen's] criminal record is surely relevant to a bond assessment, ... criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." Singh , 638 F.3d at 1206. "[B]ecause the IJ must consider 'the recency and severity of [any past] offenses,' evidence of criminal conduct grows less powerful as it becomes less current. Thus, the passage of time is undeniably relevant and the IJ must consider it." Ramos v. Sessions ("Ramos II "), 293 F.Supp.3d 1021, 1034 (N.D. Cal. 2018) (internal citation to Singh omitted). This does not mean, however, "that criminal conviction evidence inevitably loses its persuasive force" or that the government must present new evidence of dangerousness at each successive bond hearing. Id. at 1033-34.
Moreover, "not every criminal record would support a finding of dangerousness.... [A] conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then." Singh , 638 F.3d at 1206. The IJ also must consider whether the detainee's circumstances have changed such that criminal conduct is now less likely. Id. at 1205 ("[T]he BIA focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse. Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.").
"The clear and convincing evidence standard is a high burden and must be demonstrated in fact." Ramos II , 293 F.Supp.3d at 1030 (quotation and citation omitted).
Petitioner asks the Court to also require that the IJ take into account the length of *1034 detention as a factor independent of flight risk and dangerousness. Dkt. 7 at 11. Petitioner relies on Rodriguez III :
In our prior decisions, we have not directly addressed whether due process requires consideration of the length of future detention at bond hearings. We have noted, however, that "the due process analysis changes as 'the period of ... confinement grows,' " and that longer detention requires more robust procedural protections. [Diouf v. Napolitano] [ ( ]Diouf II[ ) ] , 634 F.3d [1081,] at 1086 [ (9th Cir. 2011) ] (quoting Zadvydas [v. Davis] , 533 U.S. [678,] at 701, 121 S.Ct. 2491 [150 L.Ed.2d 653 (2001) ] ). Accordingly, a non-citizen detained for one or more years is entitled to greater solicitude than a non-citizen detained for six months. Moreover, Supreme Court precedent provides that "detention incidental to removal must bear a reasonable relation to its purpose." Tijani [v. Willis] , 430 F.3d [1241,] at 1249 [ (9th Cir. 2005) ] (Tashima, J., concurring) (citing Demore , 538 U.S. at 527, 123 S.Ct. 1708 ; Zadvydas , 533 U.S. at 690, 121 S.Ct. 2491 ). At some point, the length of detention could "become[ ] so egregious that it can no longer be said to be 'reasonably related' to [a noncitizen's] removal." Id. (citation omitted). An IJ therefore must consider the length of time for which a non-citizen has already been detained.
Rodriguez III , 804 F.3d at 1089. Petitioner maintains that because the Supreme Court in Jennings only overruled Rodriguez III 's statutory interpretation, the Ninth Circuit's due process analysis remains persuasive authority. Dkt. 7 at 11. The Government replies that the length of a noncitizen's detention is not a relevant consideration in determining whether a bond is warranted, citing the criminal context where bail determinations are based on flight risk and danger to the community. Dkt. 10 at 2-3.
Although the Supreme Court has expressed concern that lengthy detention may not bear a reasonable relation to its purpose, neither Zadvydas nor Demore , the relevant authority, support the conclusion that due process requires IJs to consider the length of detention, independent of assessing flight risk and dangerousness. In Zadvydas , the Court held that permitting indefinite detention would raise "serious constitutional concerns." Zadvydas , 533 U.S. at 690, 121 S.Ct. 2491. The Court reasoned, in part, that one goal of detention-preventing flight-"is weak or nonexistent where removal seems a remote possibility at best." Id. The Court noted, "[W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation and citation omitted). To avoid constitutional concerns, the Court's solution was to create a burden-shifting scheme: after six months of post-removal-order detention, if a noncitizen could come forward with a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701, 121 S.Ct. 2491. The Court, however, did not mandate bond hearings for noncitizens whose detention was prolonged but not "indefinite."[9]
In Demore , the Court held that mandatory detention during removal proceedings for criminal noncitizens under § 1226(c) did not violate the constitution. Demore , 538 U.S. at 531, 123 S.Ct. 1708. Justice Kennedy concurred, noting, "[S]ince the Due Process Clause prohibits arbitrary deprivations *1035 of liberty, a lawful permanent resident [noncitizen] such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532, 123 S.Ct. 1708 (Kennedy, J., concurring). Thus, Justice Kennedy's proposed solution to unreasonable or unjustified mandatory detention was to provide the noncitizen with a bond hearing. He expressly provided that the hearing was to assess flight risk and dangerousness, and he did not suggest that IJs also consider length of detention.
Absent biding authority holding that due process requires IJs to consider length of detention, the Court declines to adopt this additional requirement.
3. The Court's standard of review
In challenging the IJ's denial of bond, petitioner argues that the immigration courts erred in finding that the government presented clear and convincing evidence that justified his continued detention. See Dkt. 7 at 10-14. The Government responds that the BIA found that the government presented clear and convincing evidence of petitioner's dangerousness, and that petitioner cannot challenge the immigration courts' exercise of discretion. Dkt. 10 at 5. Essentially, the Government's position is that the court's only job is to ensure that the immigration courts recite the correct legal standard. The Court finds such a standard of review "insufficient." Ramos II , 293 F.Supp.3d at 1030 (citing Nat'l Res. Def. Council, Inc. v. Pritzker , 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."); Cole v. Holder , 659 F.3d 762, 771-72 (9th Cir. 2011) ("[W]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence.") ).
The Ninth Circuit has not provided guidance "on precisely what standard of review a district court should apply in reviewing an IJ's application of the clear and convincing evidence standard of proof." Id. In Ramos II , the court undertook an extensive discussion of the appropriate standard of review, including reviewing numerous district court decisions from within the Ninth Circuit. Ultimately, the court concluded that it "reviews the IJ's factual findings for clear error, and independently reviews the facts, findings, and record to determine, de novo , whether those facts clearly and convincingly demonstrate that [the petitioner] poses such a danger to the community [or flight risk] that [he or she] must remain detained, including because no alternative to detention could protect the community [or prevent flight]." Id. at 1032-33. The Court agrees with Ramos II 's analysis and adopts this standard of review.
4. Sufficiency of petitioner's bond hearings
Petitioner contends that the IJ erred as a matter of law because she failed to consider current flight risk and dangerousness and because there is insufficient evidence in the record to satisfy the clear and convincing evidence standard. Dkt. 7 at 11-14. The Government's primary counterargument is that petitioner challenges how the IJ exercised her discretion, which is not subject to judicial review. Dkt. 10 at 5. As discussed above, however, the Court does not simply rubberstamp an IJ's decision because she recited the appropriate standard. Rather, to ensure that petitioner's *1036 due process rights are protected, the Court undertakes a closer review.
In the IJ's bond memorandum from the June 2014, March 2015, and December 2015 bond hearings, she concluded that petitioner's 2012 DUI/vehicular assault conviction was "recent and serious." Dkt. 5-1 at 245, 284; Dkt. 6-2 at 6. As petitioner points out, however, her analysis of the recency factor did not change over the 18 months between the June 2014 and December 2015 hearings. Compare Dkt. 5-1 at 245, with Dkt. 6-2 at 6. Thus, she did not meaningfully consider the impact of the passage of time on the persuasive value of petitioner's criminal history, as required by Singh . See Ramos II , 293 F.Supp.3d at 1034 ("the passage of time is undeniably relevant and the IJ must consider it" (citing Singh ) ). In this respect, the IJ erred as a matter of law.
Moreover, having reviewed the record under the standard articulated in Ramos II , the Court concludes that the facts do not clearly and convincingly demonstrate that petitioner poses such a flight risk or danger to the community that he must remain detained. The IJ's decision to deny bond is based entirely on petitioner's criminal history. As an initial matter, petitioner's criminal history does not amount to clear and convincing evidence that he presents a flight risk, particularly given that he can be placed on an ankle monitor, there is no evidence that he failed to comply with any court order in his criminal cases, and his wife and mother, who both have health issues, live in the Seattle area. See Ramos II , 293 F.Supp.3d at 1033, 1037 (conditions of supervision relevant to assessment of whether clear and convincing evidence standard was satisfied). In addition, neither the BIA nor ICE found petitioner to be a flight risk. See Dkt. 5-1 at 288, 312.
Turning to the dangerousness factor, petitioner's criminal history includes two misdemeanor DUIs from 2005 and 2007, and a felony DUI/vehicular assault conviction from 2012. These are serious crimes. As the IJ found, the most recent was also the most serious, and petitioner injured another person and damaged property. Nevertheless, the sentencing judge declined to sentence petitioner to any jail time, even though the standard range for petitioner's offender score was 3-9 months. See Dkt. 5-1 at 96. At the time ICE arrested him, petitioner was in the process of completing the noncustodial terms of his conviction and was complying with his probation. Petitioner's most recent criminal activity occurred in August 2011, over four years before his December 2015 bond hearing, and over seven years from the date of this Report and Recommendation. There are also indications in the record that petitioner has been sober since the accident, would continue treatment for alcohol addiction if released, and could be released on the condition that he refrain from operating motor vehicles. See Dkt. 1 at ¶ 21; Dkt. 8-1; Singh , 638 F.3d at 1205 (IJ must consider whether changed circumstances, such as sobriety, affect current dangerousness). Based on this record, the Court concludes that clear and convincing evidence does not support the IJ's decision to deny bond or release on appropriate conditions.
The Court's conclusion aligns with district court decisions from this circuit. For example, in Mau v. Chertoff , 562 F.Supp.2d 1107 (S.D. Cal. 2008), the IJ denied release where the petitioner, who had been detained for over three years, had two misdemeanor DUIs and one felony DUI that were between four and six years old. Id. at 1118. The court found that the petitioner's "past DUI convictions, while serious, cannot independently justify his continued indefinite detention, especially in light of the fact that the detention period (which has surpassed three years) has nearly doubled the 16 month penalty *1037 Petitioner received for that crime." Id. The court concluded, "Under the circumstances, the IJ's reliance on [these] convictions ... as the basis for the finding of present dangerousness was an error of law." Id. Petitioner in this case and the petitioner in Mau have very similar criminal histories. Petitioner's claim of error, however, is stronger because he received no jail time for his most serious crime, whereas the petitioner in Mau received 16 months, and yet petitioner's detention is more than twice as long as in Mau . Thus, like in Mau , the IJ in this case erred in finding dangerousness based on petitioner's criminal history.
Ramos II is also instructive. There, the IJ denied bond where the petitioner had two non-violent misdemeanor DUIs from 2015 and 2016 and was never sentenced to any custodial time. 293 F.Supp.3d at 1024. The court found that clear and convincing evidence did not support continued detention, reasoning that the petitioner never served time in jail, was complying with the terms of her probation when ICE arrested her, was committed to addressing her alcohol addiction, and the most recent offense occurred 16 months earlier. Id. at 1036-37. The court also found that there were many alternatives to detention that would be sufficient to protect the public from any danger the petitioner posed. Id. at 1037. While the offenses in Ramos II were less significant than in petitioner's case, both petitioners received no jail time for their crimes. The cases are also similar in that both petitioners were complying with the terms of their probations when ICE arrested them, and the petitioners indicated a commitment to remaining sober and obtaining help with that commitment upon release. In addition, the offenses in Ramos II occurred much more recently, only 16 months before the court's opinion whereas petitioner's most recent offense occurred approximately 89 months ago. The Ramos II court's conclusion that appropriate alternatives to detention could be imposed to protect the public from any risk the petitioner posed is equally applicable here, particularly given that petitioner's only criminal history involves alcohol and driving.
Both Mau and Ramos II support the Court's conclusion that the Government has not presented clear and convincing evidence, as a matter of law, that justifies petitioner's continued detention.
5. Remedy
For relief, petitioner asks the Court to release him because his lengthy detention is both "unreasonable and unjustified." Dkt. 7 at 16. Petitioner seizes on language from Justice Kennedy's concurring opinion in Demore , quoted in full above. See supra pp. 1034-35. As noted, however, Justice Kennedy's proposed remedy for unreasonable or unjustified detention was a bond hearing, not release. Id. The same remedy is appropriate in this case, particularly given the length of time since petitioner's last bond hearing. Only if the government is unable to justify petitioner's continued detention, at a new bond hearing conducted under the standards articulated above, should he be released on appropriate conditions.
B. Eighth Amendment
Petitioner contends that his continued detention violates the Eighth Amendment. See Dkt. 1. The Government argues that petitioner fails to state a claim because the Eighth Amendment does not apply to immigration detention. Dkt. 4 at 12. The Government cites two recent district court cases that denied Eighth Amendment claims in immigration habeas actions. Milan-Rodriguez v. Sessions , 16-cv-1578, 2018 WL 400317, at *6 (E.D. Cal. Jan. 12, 2018) (Report and Recommendation); Slim v. Nielson , 18-cv-2816, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29, 2018). These cases relied on *1038 INS v. Lopez-Mendoza , 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry...."), and Agyeman v. INS , 296 F.3d 871, 886 (9th Cir. 2002) ("It is well established that deportation proceedings are civil, rather than criminal, in nature.").
In response, petitioner concedes that the Eighth Amendment does not apply to most instances of immigration detention. Dkt. 7 at 18. He argues, however, that his detention-given its length, multiple transfers, housing among criminal detainees and prisoners, and 70 days in solitary confinement-has crossed the line into punishment. Id. (citing Bell v. Wolfish , 441 U.S. 520, 536-37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (pretrial detention permissible under the Due Process Clause "so long as [the] conditions and restrictions [of detention] do not amount to punishment") ). He maintains that the alleged Eighth Amendment violation entitles him to release from detention. Dkt. 7 at 21. For support, petitioner points to two civil rights cases brought by civil detainees under 42 U.S.C. § 1983, which challenged the conditions of their confinement, Jones v. Blanas , 393 F.3d 918 (9th Cir. 2004), and Kitchens v. Tordsen , No. 12-cv-105, 2012 WL 6020018 (E.D. Cal. 2012). Dkt. 7 at 19.
Both of these cases recognize that civil detainees cannot be held under conditions that amount to "punishment." But neither supports petitioner's claim that the alleged conditions of his confinement entitle him to habeas relief. To the extent petitioner seeks to recover from the allegedly unconstitutional nature-as opposed to duration-of his confinement, his claims do not belong in this immigration habeas action. See Badea v. Cox , 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement. A civil rights action, in contrast, is the proper method of challenging 'conditions of ... confinement.' ") (cited sources omitted). And to the extent petitioner contends that the length of his immigration detention amounts to punishment in violation of the Eighth Amendment, he fails to cite any caselaw that supports his position. Petitioner's Eighth Amendment claim should be denied.
IV. CONCLUSION
The Court recommends that the Government's motion to dismiss, Dkt. 4, be GRANTED in part and DENIED in part, and petitioner's habeas petition, Dkt. 1, be GRANTED in part and DENIED in part. Petitioner's request for immediate release should be denied, but the Government should be ordered to release him on appropriate conditions within 30 days unless, at a new bond hearing, it presents clear and convincing evidence that he presents a current flight risk or danger to the community. A proposed order accompanies this Report and Recommendation.
Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within fourteen (14) days of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within fourteen (14) days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on January 25, 2019.
Dated this 9th day of January, 2019.

Petitioner requested oral argument. The Court finds this matter suitable for resolution without argument and DENIES petitioner's request.

See Casas-Castrillon v. Dept. of Homeland Sec. , 535 F.3d 942 (9th Cir. 2008) (a noncitizen subject to prolonged detention while his/her removal proceedings are pending is entitled to a bond hearing).

The BIA's decision is not in the record, but the parties appear to agree it was dismissed. See Dkt. 4 at 6 n.1; Dkt. 7 at 5.

See Franco-Gonzalez v. Holder , No. 10-cv-2211, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) (class action lawsuit requiring bond hearings for noncitizens who have been detained by ICE for more than six months and who have been identified by medical personnel as having a serious mental disorder).

See Rodriguez v. Robbins ("Rodriguez III "), 804 F.3d 1060 (9th Cir. 2015) (noncitizens who are detained pending removal proceedings are entitled to a bond hearing every six months while in detention), rev'd sub nom Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018).

Petitioner was given an opportunity to dispute this contention at the hearing but did not. See Dkt. 6-1 at 6. Nevertheless, he now objects to DHS's reliance on this information because there is no supporting evidence in the record. Dkt. 7 at 12 n.6. The Government did not offer a rebuttal to this argument.

Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. See Hernandez v. Ashcroft , 345 F.3d 824, 828 n.2 (9th Cir. 2003).

The Government questions whether the clear and convincing evidence standard survives Jennings . Dkt. 10 at 5. The Court concludes that it does, based on the reasoning in Cortez v. Sessions , 318 F.Supp.3d 1134 (N.D. Cal. 2018) :
In Singh , the Ninth Circuit held that "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond at a Casas hearing." 638 F.3d at 1203. Singh observed that the "Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the State' in civil proceedings in which the 'individual interests at stake ... are both particularly important and more substantial than mere loss of money.' " Id. at 1204 (quoting Cooper v. Oklahoma , 517 U.S. 348, 363, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) ). See also Ramos II , 293 F.Supp.3d at 1028 (holding that clear and convincing evidence standard applies to bond hearings for noncitizens detained pursuant to section 1231(a)(6) ).
Jennings held that the Ninth Circuit erred in construing section 1226(a), stating that "[n]othing in § 1226(a)'s text ... supports the imposition" of the procedural protections ordered by the Ninth Circuit-"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the [noncitizen's] continued detention is necessary." 138 S.Ct. at 847. The Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that Jennings reversed the clear and convincing evidence standard announced in Singh or later Ninth Circuit cases relying on Singh 's reasoning.
Cortez , 318 F.Supp.3d at 1146-47 ; see also Guerrero-Sanchez v. Warden York Cnty. Prison , 905 F.3d 208, 224 n.12 (3d Cir. 2018) (adopting Singh 's clear and convincing evidence standard post-Jennings ); Darko v. Sessions , 342 F.Supp.3d 429, 434-36 (S.D.N.Y. 2018) (same); Hernandez v. Decker , No. 18-cv-5026, 2018 WL 3579108, at *10-*11 (S.D.N. Y Jul. 25, 2018) (same).

After Zadvydas , the Ninth Circuit held that noncitizens in post-removal-order detention are entitled to bond hearings after six months. Diouf II , 634 F.3d at 1091-92.